**In re AMERICAN SPORTS INNOVATIONS ("ASI"), a Washington general partnership, Debtor.**

**LEE LUDWIG & ASSOCIATES, INC., a California corporation, Plaintiff,**

**v.**

**SEASPORT, INC., a California corporation; William Walters and Betty Ann Walters, husband and wife, Steven Kimber and Jane Doe Kimber, husband and wife; American Sports Innovations, a Washington general partnership; SMY International, Inc., a Washington corporation; Feng Mao (John Lee) and Yang Shu–Chen (Sue Lee), husband and wife; Rainier National Bank, a national banking corporation, Defendants.**

**Bankruptcy No. 88–03519.
Adv. No. A89–01229.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Aug. 18, 1989.

Peter S. Holmes, Culp, Guterson & Grader, Seattle, Wash., for defendant Security Pacific Bank, formerly known as Rainier Nat. Bank.

J. Richard Manning, Seattle, Wash., for defendants John Lee et ux. estate and American Sports Innovations.

Malcolm S. Harris, Harris, Orr & Wakayama, Seattle, Wash., for plaintiff.

## OPINION ON MOTIONS FOR SUMMARY JUDGMENT

SAMUEL J. STEINER, Chief Judge.

This matter is before the Court on motions for summary judgment. The issues are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O). The determination of "core" proceeding is for purposes of the present motions only. It is not binding on future matters brought before the Court in this adversary proceeding, such as the issue of damages against Walters, Kimber, Seasport, SMY International, and Security Pacific Bank.

### FACTS AND ISSUES

On March 31, 1986, the plaintiff, Lee Ludwig & Associates (Ludwig), sold a Faratron heat sealer and a Thermatron generator to the defendant Seasport, Inc., a corporation whose principal place of business was in Ventura, California. The items are used primarily in the manufacture of skin diving equipment. Ludwig sold and delivered the equipment on a conditional sales contract and duly perfected its security interest in California. Walters and Kimber were the principals of Seasport.

In later 1986 or early 1987, Walters, Kimber and the defendant, Lee, created the debtor, which was a joint venture for the purpose of manufacturing skin diving equipment. The partners were Walters, Kimber and the defendant, SMY International, Inc., a corporation owed and controlled by Lee. As their capital contribution to the joint venture Walters and Kimber removed the heat sealer and the generator from the Seasport premises in Ventura, and with Lee's financial help delivered them to the debtor's premises in Tukwila, Washington. In so doing, Walters and Kimber apparently abandoned Seasport, its premises in Ventura, and $80,000 in Seasport obligations. In addition, Walters and Kimber apparently ceased making payments on the Seasport obligation to Ludwig. From the affidavits and evidence presented in these motions and/or responses, it appears that there was no Seasport corporate resolution, bill of sale, assignment or any other documentation which authorized the removal and transfer of the equipment from Seasport to Walters and Kimber and/or to the debtor.

Some time thereafter, Ludwig prepared documents so that its security interest could be timely perfected in the State of Washington. However, the debtor and/or its partners refused to sign the documents with the result that the Ludwig security interest was never perfected in Washington, and lapsed at the expiration of the one hundred and twenty-day period provided for in RCW 62A.9–103(1)(d)(i).

In the meantime, that is on July 29, 1987, the debtor and/or its partners executed a promissory note to the Security Pacific Bank [1] and secured the obligation by granting Security Pacific Bank a security interest in all of its assets including the heat sealer and generator.

Since then Walters and Kimber have withdrawn from the debtor joint venture; and Lee's corporation, SMY has been administratively dissolved by the Washington Secretary of State. Lee remains in possession of the heat sealer and generator. As of the date this Chapter 11 case was filed (May 11, 1988) and at the present time, Lee appears to be a sole proprietor doing business under the assumed name of American Sports Innovations. Lee filed an individual Chapter 11 bankruptcy case on July 29, 1988, under bankruptcy case number 88–05583.

Ludwig commenced this adversary proceeding in which he seeks a declaration that the heat sealer and generator are not assets of the estate and for a turnover order. In the alternative, Ludwig contends that the debtor obtained the equipment by fraud, criminal theft and conversion with damages to be proven. In the further alternative, Ludwig seeks a declaration that Security Pacific Bank has no security interest in the equipment, or that the security interest is subordinate to its security interest. Finally, Ludwig alleges that the ac-

---

1. Security Pacific Bank is the successor through merger with Rainier National Bank. Defendant Rainier National Bank will be referred to in this opinion as Security Pacific Bank.

tions of the defendants would render any money judgment for conversion, etc., nondischargeable, pursuant to § 523(a)(2)(A), and (a)(4).

Security Pacific Bank has now moved for summary judgment against Ludwig, contending that Ludwig's security interest in the equipment was not perfected in Washington as required by RCW 62A.9–103(1)(d)(i), and therefore Ludwig has no security interest in the equipment or that its interest is subordinate to that of Security Pacific.

The debtor and Lee have moved for summary judgment against Ludwig, also arguing that Ludwig lost its security interest by failing to perfect in the State of Washington. The debtor and Lee have also sought dismissal of all claims related to nondischargeability on the basis that the complaint was filed after the deadline for filing dischargeability complaints.

In addition, Lee has also sought summary judgment contending that the complaint must be dismissed as Ludwig failed to obtain relief from the automatic stay of Section 362(a) of the Bankruptcy Code in his bankruptcy case; that Ludwig did not file a claim in the Lee case; and for failure to state a claim against the Lee bankruptcy estate. Ludwig has responded by primarily arguing that neither the debtor nor Security Pacific is entitled to summary judgment because at the time the security interest was granted to Security Pacific Bank the debtor had no interest in the heat sealer and generator which could be the subject matter of a security interest in that the items belonged to Seasport.

Ludwig did not file a cross-motion for summary judgment.

## DISCUSSION

The Court may grant a Motion for Summary Judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

The facts must be viewed and any inferences must be drawn in a light most favorable to the non-moving party. *Ret. Clerks Union Loc. 648 v. Hub Pharmacy,* 707 F.2d 1030 (9th Cir.1983). Many of the issues raised by the moving parties may be disposed of in summary fashion.

## DISCHARGEABILITY:

In paragraph 2(a) of its Prayer for Relief, Ludwig seeks an order that the equipment was obtained by fraud, conversion, and larceny. Further, Ludwig seeks a judgment for damages against all defendants, jointly and severally, which judgment should be nondischargeable under §§ 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code.[2] American Sports Innovations (ASI) and Lee have filed motions for summary judgment on the issue of nondischargeability. Each contends that the complaint to determine dischargeability was untimely filed. The Court finds that there are no issues of material fact and that portion of the ASI and Lee motion should be granted.

Bankruptcy Rule 4007(c) imposes a deadline for filing complaints to determine the dischargeability of a debt. Pursuant to that rule, a complaint to determine the dischargeability of a debt under § 523(a)(2), (4), or (6) shall be filed no later than 60 days after the § 341 first meeting of creditors. The deadline for filing complaints in the ASI bankruptcy case was October 24, 1988, while the deadline in the Lee case was November 22, 1988. The present complaint was filed on February 21, 1989.

The deadline for filing dischargeability complaints is jurisdictional. As the portion of the complaint seeking to hold any judgment nondischargeable was not timely filed, the Court lacks jurisdiction to hear that aspect of this case. Therefore, the motion for summary judgment dismissing the dischargeability portion of the complaint must be granted. *In re Hill,* 811 F.2d 484 (9th Cir.1987); *In re Neese,* 87

---

**2.** While not immediately before the Court in these motions, the Court concludes that it cannot enter a judgment of nondischargeability against defendants Seasport, Inc., Walters, Kimber, SMY International, Inc., or Security Pacific Bank. None of the preceding defendants have bankruptcy cases pending before this Court, and the jurisdictional requirements for a judgment of nondischargeability are lacking.

B.R. 609 (9th Cir. B.A.P.1988); *In re Rick-etts,* 80 B.R. 495 (9th Cir. B.A.P.1987); *In re Donald D. Rhodes,* 71 B.R. 206 (9th Cir. B.A.P.1987); *In re Fauchier,* 71 B.R. 212 (9th Cir. B.A.P.1987); *In re Herbert B. Rhodes,* 61 B.R. 626 (9th Cir. B.A.P.1986).

RELIEF FROM STAY AND FAILURE TO FILE A CLAIM:

Lee has argued that the complaint must be dismissed because Ludwig failed to obtain relief from the automatic stay in the Lee bankruptcy case prior to filing this adversary proceeding. Lee concedes that the property in question is not property of the Lee estate. Lee's argument is based upon those portions of the plaintiff's complaint which seeks attorneys' fees, damages, injunctive relief and nondischargeability. Lee has also argued that the complaint must be dismissed because Ludwig did not file a claim in the Lee bankruptcy case.

■ The Court is unaware of any case law which holds that a plaintiff must obtain relief from stay prior to filing a dischargeability complaint. Further, while the broad language of § 362(a) generally bars all actions against the debtor and or property of the estate, the automatic stay implicitly does not bar a party from commencing an adversary or contested proceeding against the debtor in the court where the petition is pending. *In re American Spinning Mills, Inc.,* 43 B.R. 365 (Bankr.E.D.PA.1984). *In re Watson,* 78 B.R. 232 (9th Cir.B.A.P. 1987). Further, the automatic stay is only applicable against the property of the estate and Lee concedes that the equipment is not property of his bankruptcy estate. Lee argues, however, that the portion of the complaint seeking attorneys' fees, declaratory relief, and damages does violate the stay. Those portions of the complaint seeking attorneys' fees, damages, etc., are only applicable if the court determines that the equipment is property of either the ASI or Lee bankruptcy estates. Since Lee has conceded that the equipment is not property of his bankruptcy estate, that portion of the motion is not well taken. In that same vain, if the property is not property of the Lee estate, then Ludwig need not file a claim. That portion of the Lee Motion seeking to dismiss the complaint for the failure to obtain relief from the automatic stay will be denied. Similarly, that portion of the motion seeking to dismiss the complaint for failure to file a claim in the Lee bankruptcy estate will also be denied.

FAILURE TO STATE A CLAIM:

■ Lee contends that Ludwig has failed to state a claim against the Lee bankruptcy estate and that the complaint should be dismissed. The Court disagrees. The test to determine the sufficiency of the complaint was set forth in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In that case, the U.S. Supreme Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 102.

In its complaint, Ludwig has alleged, among other things, that ASI, SMY, and/or Lee has converted, or stolen, property belonging to Seasport and that the defendants should be liable for damages. Further, Ludwig alleges that after being asked to execute a new financing statement, which Ludwig needed to perfect its security interest in Washington, Lee refused to do so. In the present case, after reviewing the allegations set forth in the complaint, the Court is not conviced beyond doubt that the plaintiff will be unable to produce any facts which would entitled him to relief. That portion of Lee's motion will be denied.

VALIDITY AND PRIORITY OF SECURITY AGREEMENTS:

■ The primary issues in these motions is whether Security Pacific Bank has a security interest in the equipment, and if it does, whether the security interest takes priority over the security interest asserted by Ludwig by virtue of Ludwig's failure to perfect the Ludwig security interest in Washington as required by RCW 62A.9–103(1)(d)(i). With respect to the motion of Security Pacific Bank, and with respect to that portion of the motion of ASI and Lee, the Court finds that material issues of ma-

terial fact exist which preclude summary judgment.

The arguments of Security Pacific Bank, ASI and Lee are generally correct on the issue of priority. RCW 62A.9–103(1)(d)(i) provides:

**62A.9–103. Perfection of security interests in multiple state transactions**

(1) Documents, instruments and ordinary goods.

(d) When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest,

(i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal.

The facts are undisputed that Ludwig did not perfect in the State of Washington within the four-month period. Resolution of the issue would appear to be simple. However, resolution requires a two-step process. The determination of priority is contingent upon a finding that Security Pacific Bank has a valid security interest in the subject equipment. If it does, then RCW 62A.9–103(1)(d)(i) controls the disposition of the case.

The enforceability of a security interest in equipment is governed by RCW 62A.9–203 which provides:

**62A–9–203. Attachment and enforceability of security interest; proceeds, formal requisites**

(1) Subject to the provisions of RCW 62A.4–208 on the security interest of a collecting bank, RCW 62A.8–321 on security interests in securities and RCW 62A.9–113 on a security interest under the Articles on Sales, *a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:*

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...;

(b) value has been given; and

(c) *the debtor has rights in the collateral.* (emphasis added)

In response to the motions, Ludwig argues that ASI had no rights in the collateral with which to grant a security interest to Security Pacific Bank. Specifically, Ludwig contends that Seasport held title to the equipment pursuant to the contract of conditional sale; and that Seasport, and not its officers, had the right to use and control the equipment. Ludwig contends that the actions of Walters and Kimber in removing the equipment to Washington violated criminal theft statutes, and common law principles of conversion. Ludwig also contends that Walters, Kimber, SMY, ASI and Lee violated criminal conversion statutes because each knew of the Ludwig security interest, and each refused to sign a new financing statement, to be used for perfection in Washington, when requested to do so by Ludwig. As such, Ludwig contends that Walters, Kimber, SMY, ASI and Lee are converters, and that a converter does not have rights in collateral.

RCW 62A.9–202 diminishes the concept of title with respect to the granting of a security interest. That section provides that "each provision of this Article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." Clearly, the requirement that the debtor have rights in the collateral is not dependent upon whether he has title to the collateral. A number of cases have held that so long as the debtor has some possessory rights to the collateral, contractural rights to the collateral, property right or property interest pursuant to Article 2, any title, be it good or voidable, the debtor has sufficient rights in the collateral to convey a security interest to a secured party. Hawkland, Lord & Lewis UCC Series § 9–203:12.

Ludwig has cited *Disch v. Raven Transfer*, 17 Wash.App. 73, 561 P.2d 1097 (1977) for the proposition that mere possession is not sufficient. The case further stands for the proposition that even if one has the temporary right to use the property of another and if that possessor attempts to pledge the property without the consent of the owner, the owner may reclaim the property from whomever is in possession. *Id.* at 75–76, 561 P.2d 1097. However, the case not does hold that express consent is the only method available. In *Bank of the West v. Comm. Credit Financial Serv.*, 655 F.Supp. 807 (N.D.Cal.1987), *rev'd on other grounds*, 852 F.2d 1162 (9th Cir. 1988), the district court, applying California law, held that a debtor who does not own collateral could use the collateral as security when the debtor has the authorization of the actual owner of the property. In gaining authorization, the debtor obtains rights in the collateral. *Id.* at 813. Authority to use the collateral need not be express but could be implied under the circumstances. *Id.* at 813. While the Court agrees that a one who converts property of another may not obtain "rights in collateral", *Mattson v. Commercial Credit Business Loans, Inc.*, 2 UCC Rep Serv.2d 135, 723 P.2d 996 (D.Or.1986), the Court concludes that there are material issues of fact as to whether Walters, Kimber, SMY, ASI and Lee converted property of Seasport. Specifically, the Court finds that material issues of fact exist as to whether Ludwig knew that the collateral had been moved to Washington and whether Seasport authorized, either expressly or impliedly, the use of its collateral.

PAROL EVIDENCE RULE:

■ In its Response, Ludwig argues that Security Pacific Bank does not have a valid security agreement in the equipment because the bank knew of the questionable ownership of the property, and because the parties did not intend that the equipment be security for the Security Pacific Bank obligation. As a result, Ludwig alleges that Security Pacific Bank has waived its security interest in the equipment. Security Pacific Bank denies that it had any knowledge of Ludwig's security interest in the equipment when its security interest

was taken and that any testimony as to the knowledge of bank employees and intent is inadmissible under the parol evidence rule.

The admissibility of parol evidence is governed by Washington law. The parol evidence rule is not a rule of evidence, but a matter of substantive law. *Barber v. Rochester*, 52 Wash.2d 691, 328 P.2d 711 (1958). The "rule" was set forth in *Buyken v. Ertner*, 33 Wash.2d 334, 205 P.2d 628 (1949). It provides:

> "[P]arol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake." *Id.* at 341, 205 P.2d 628.

The parol evidence rule applies only to writings intended by the parties as a final expression of the terms of their agreement. The Court is to make a preliminary determination of whether the parties intended to be an integration of their agreement. In doing so, the trial court should entertain all relevant, extrinsic evidence, be it oral or written and if the court determines that the writing is a final expression of the parties agreement, the extrinsic evidence is disregarded. *Becker v. Lagerquist Bros.*, 55 Wash.2d 425, 348 P.2d 423 (1960). Although parol evidence may be admitted to show that a contract is not integrated, it is not admissible to create an ambiguity. *St. Yves v. Mid State Bank*, 111 Wash.2d 374, 757 P.2d 1384 (1988).

The court has reviewed the voluminous record before it on the present motions. Ludwig contends that the bank may have known about the questionable ownership of the equipment. On the other hand, the bank officer has denied any such knowledge. The bank officer has also denied any statements that the bank was not looking to the equipment as security. As such, the Court concludes that the written security agreement is an integrated document and that parol evidence would be inadmissible to contradict the terms of the document.

CONCLUSIONS

1. That portion of the complaint which sought a determination of dischargeability was untimely filed. On the issue of dis-

chargeability, the motions of ASI and Lee should be granted.

2. On the issues of failure to obtain relief from stay or file a claim in the Lee bankruptcy estate, the motion will be denied. While there are no material issues of fact, the Court is unable to conclude that the moving party is entitled to judgment as a matter of law.

3. The complaint has stated a claim against Lee and that portion of the motion will be denied.

4. The Court has concluded that on the issue of perfection of Ludwig's security interest, material issues of fact exist as to whether the debtor had any rights in the collateral to which a security interest could attach. The existence of the issues of fact preclude summary judgment. The motion of Security Pacific Bank and the motion of ASI and Lee will be denied.

5. The written security agreement is a final expression of the parties agreement. The parol evidence rule prohibits the introduction of extrinsic evidence to contradict the terms of the writing.

6. This opinion shall serve as such findings of fact and conclusions of law that may be necessary.