In re ATREUS ENTERPRISES,
LTD., Debtor.

**LIGHTHOUSE BLUFFS,
CORP., Plaintiff,**

v.

**ATREUS ENTERPRISES,
LTD., Defendant.**

**Bankruptcy No. 90 B 20117.
No. 90 ADV. 6069.**

United States Bankruptcy Court,
S.D. New York.

Oct. 24, 1990.

Cerrato, Sweeney, Cohn, Stahl & Vaccaro, White Plains, N.Y., for Lighthouse Bluffs, Corp.

Jeffrey L. Sapir, Hartsdale, N.Y., for debtor.

## DECISION ON COMPLAINT FOR AN ORDER DETERMINING PARTIES' RIGHTS IN CERTAIN UNIMPROVED REAL ESTATE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, Lighthouse Bluffs, Corp., has commenced an adversary proceeding pursuant to Bankruptcy Rule 7001 for a declaratory judgment determining the parties' interest in certain unimproved real estate and for other equitable relief against the Chapter 11 debtor, Atreus Enterprises, Ltd. (the "debtor"). The plaintiff also seeks an order granting leave for it to exercise a power of attorney previously executed by the debtor authorizing the plaintiff to convey to itself the property in question which was the subject of a joint venture development agreement between the parties. The complaint is based upon the Joint Venture Agreement between the parties, dated August 30, 1988 ("the Joint Venture Agreement"), whereby they agreed to enter into a joint venture to acquire, as tenants in common, and subdivide and sell, certain real property in the Town of Esopus, Ulster County, New York. The Joint Venture Agreement provides that upon the debtor's default, the plaintiff may exercise a power of attorney issued in its favor by the debtor and convey the debtor's entire interest in the real property to itself, without any reimbursement to the debtor for its advances previously made.

The debtor denies that it defaulted under the Joint Venture Agreement between the parties and that the Agreement was extended for an additional year, with the result that the plaintiff is not entitled to exercise the power of attorney by conveying the property in question to itself.

### FINDINGS OF FACT

1. On February 13, 1990, the debtor, Atreus Enterprises, Ltd., a New York corporation located in White Plains, New York, filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. The debtor continued to operate its business and manage its property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Plaintiff, Lighthouse Bluffs, Corp., is a New York Corporation located in White Plains, New York, which has filed a proof of claim in this Chapter 11 case.

3. On August 30, 1989, the debtor entered into a Joint Venture Agreement with

the plaintiff wherein the debtor represented that it was a contract vendee under an option to purchase certain real property in the Town of Esopus, Ulster County, New York, then owned by Cynthia Hurd. The Joint Venture Agreement recites that the debtor paid to Cynthia Hurd, as Seller, the total sum of $21,000.00 ($6,000.00 initial consideration, plus $15,000.00 as additional consideration for five extensions). In order to preserve the debtor's rights to purchase the property, it was required to pay an additional $40,000.00 to exercise the purchase option by no later than June 30, 1988. The Joint Venture Agreement states that the debtor did not have available the $40,000.00 to exercise the purchase option and requested the plaintiff's predecessor in interest, Monetary Advisory Corporation ("Monetary") to advance $40,000.00 to the debtor, which Monetary agreed to do. The Joint Venture Agreement also states that Monetary assigned to the plaintiff all its rights under the Agreement.

4. The Joint Venture Agreement states that the plaintiff advanced the $40,000.00 to exercise the purchase option and that the debtor advanced the following sums:

| | |
|---|---|
| Initial Option Consideration | $ 6,000.00 |
| Extensions (5) of option | 15,000.00 |
| Engineering | 7,300.00 |
| Surveying | 7,200.00 |
| Well Drilling | 15,200.00 |
| Filing Fees | 1,700.00 |
| Environmental Input Review | 20,000.00 |
| TOTAL | $72,400.00 |

5. At the trial, the evidence revealed that the debtor did not advance the initial $6,000.00 option consideration. Instead, it was paid on its behalf by a broker named Raphael, which fact the plaintiff's president testified was not known to him although the debtor's officer, Robert Cimmino, testified that he informed the plaintiff that Raphael, and not the debtor, advanced the $6,000.00 initial option consideration.

6. The debtor's officer, Robert Cimmino, admitted that the sum of $7,300.00 for engineering expenses was not paid as stated in the Joint Venture Agreement.

7. As to the item of $7,200.00 for surveying, Robert Cimino testified that $5,000.00 remains unpaid.

8. The well drilling expenses of $15,200.00 listed in the Joint Venture Agreement as having been advanced by the debtor, was not fully paid. Robert Cimmino testified that $5,000.00 were paid and that $10,200.00 was the subject of a law suit.

9. The last sentence in paragraph # 7 of the Joint Venture Agreement states:

Provided no such items of Default exists, Atreus (the debtor) shall have 365 days from the date of Closing (the "1 year Filed Period") within which to obtain final approval of the Subdivision Application, and file the survey representing the Subdivision (the "Subdivision Map") with the County Clerk's Office.

10. Although more than 365 days have elapsed from the time that the debtor closed title and obtained the property in question from Cynthia Hurd pursuant to the exercise of the purchase option, it has not obtained final approval of the Subdivision Application referred to in paragraph # 7 of the Joint Venture Agreement.

11. Paragraph # 12 of the Joint Venture Agreement gives the debtor the right to obtain an additional one year extension of the Joint Venture Agreement if the debtor does not obtain the appropriate municipal final approval of the subdivision project proposed for the real estate in question.

Paragraph # 12 of the Joint Venture Agreement states the following:

"upon fifteen (15) days prior written notice from Atreus to Lighthouse ... provided Atreus is not in default or threatened default under this Agreement at the time of such written notice; however, it is subject to defeasance on 10 days' prior written notice to that effect, upon the happening of any Event of Default during the 2nd Year Filing Period, and in the further event Atreus fails to pay, on a timely basis, (i) all real estate taxes affecting the premises as they become due and payable, and all interest due under the Mortgage and Note (collectively the '2nd year Costs'), (ii) all principal and other charges due under the Mortgage Note, (iii) all costs and expenses related to the premises and the maintenance

thereof, including the existing house, and (iv) all costs of policies of insurance affecting the Premises."

12. A default by the debtor and the consequences of such default are covered in paragraph # 17 of the Joint Venture Agreement as follows:

ATREUS DEFAULT/POWER OF ATTORNEY: In case one or more of the following events ("Event of Default") shall have occurred and shall not have been remedied:

(a) default shall be made in the performance of any covenant or agreement on the part of Atreus to be performed hereunder, and notice of such default shall have been given to Atreus; or

(b) *any of the representations herein made by Atreus are determined to be untrue; or* (emphasis added)

(c) if pursuant to an order, judgement or decree entered by any court of competent jurisdiction (i) a receiver, trustee or liquidator of Atreus or of all or a substantial part of Atreus' assets shall be appointed, or (ii) Atreus shall be adjudicated as bankrupt or insolvent, or (iii) a petition seeking reorganization of Atreus or an arrangement with creditors or to take advantage of any insolvency law shall be approved, and a result of the happening of any such contingencies, the obligation of Atreus to perform any of its obligations hereunder shall be modified or abrogated, or if this Agreement or any of the obligations of Atreus hereunder are disaffirmed by any trustee, receiver or liquidator of Atreus appointed in any proceeding by any court of competent jurisdiction, *Lighthouse may, at its option, give to Atreus a notice of election to acquire Atreus' entire interest in the Premises, and upon ten (10) days notice of such election, Atreus agrees, at its sole cost and expense, to immediately thereafter assign, transfer and convey its entire interest in the Premises to Lighthouse, free and clear of all leases, liens, encumbrances, and capital gains transfer taxes, except for the lien of the purchase money first mortgage referred to in the Contract, if any, by bargain and sale deed without*

*covenants,* and further agrees to execute and deliver all in recordable form, such other papers, documents, and New York State Capital Gains Tax Transferor Questionnaire, reasonably required in order to give effect to such assignment, transfer and conveyance. *Upon such a happening, Atreus shall not have any further rights or interests in and to the Premises, nor any right to a refund or repayment of all advances previously made prior to and pursuant to this Agreement,* and this Agreement shall be considered terminated and of no further force and effect. The parties have agreed upon the provisions contained in this par. 17, in order to enable Lighthouse or its designee to perform Atreus' obligation hereunder, because of the uncertainty in completing the project herein described in a timely and proper manner, and because of the difficulty in calculating and proving the nature and extent of the actual damages incurred and to be incurred by Lighthouse as a result of any such Event of Default by Atreus. *In order to give further effect to the provisions contained in this par. 17, Atreus hereby irrevocably appoints Lighthouse to be the true and lawful Attorney of Atreus in the name and on behalf of Atreus to prepare, sign, execute, deliver, and record the bargain and sale deed hereinabove mentioned,* and to prepare, sign, execute, and deliver all other papers and documents which may be necessary to give effect to such deed, with full power of substitution, Atreus hereby ratifying and confirming whatsoever the Attorney shall lawfully do or cause to be done by virtue hereof, and this Power of Attorney, coupled with an interest, shall remain in full force for so long as this Agreement is in effect. At Closing, Atreus and Lighthouse agree to enter into a separate written appointment, in accordance with the provisions of this par. 17, executed and acknowledged in the same manner as a deed, to be filed in the Office of the Clerk of the County of Ulster. (Emphasis added).

13. In furtherance of the Joint Venture Agreement the debtor issued and delivered to the plaintiff a limited Power of Attorney, dated August 30, 1988, for the purpose of authorizing the plaintiff to prepare, sign, execute and deliver the bargain and sale deed to the real estate in question in the event of a default as expressed in paragraph #17 of the Joint Venture Agreement.

14. By letter dated August 30, 1988, the law firm of Cerrato, Sweeney, Cohn, Stahl & Vaccaro, attorneys for the plaintiff, submitted a bill to the debtor for their legal services on behalf of the plaintiff in connection with the Joint Venture Agreement.

15. The debtor refused to pay the bill for legal fees on the ground that the Joint Venture Agreement with the plaintiff did not obligate the debtor to pay for the plaintiff's legal expenses. The attorneys for the plaintiff commenced an action against the debtor in the City Court of the City Court of White Plains, New York, which resulted in a stipulation of settlement in September of 1989. Pursuant to the settlement, the debtor agreed to pay the sum of $5,000.00 in two equal installments of $2,500.00 each. The debtor failed to comply with this settlement.

16. By letters dated July 13, 1989, January 14, 1990 and February 1, 1990, the attorneys for Cynthia Hurd, notified the plaintiff of defaults on the part of the joint venture parties to pay mortgage obligations and municipal taxes, giving Cynthia Hurd, as mortgagee, the right to declare the entire mortgage balance due by reason of the defaults in payment.

17. By letter dated July 12, 1989, the plaintiff advised the debtor of its payment of principal and interest due to the mortgagee, Cynthia Hurd, in the sum of $32,839.33. The plaintiff also informed the debtor of a previous interest payment of $17,360.00, and payments of taxes in the amount of $1,675.00, repairs in the amount of $890.00 and a principal payment of $7,233.33 at the debtor's specific request. The plaintiff then demanded reimbursement within ten (10) days from the date of such notice and further said: "your failure to make such payment constituted an 'Event of Default' pursuant to paragraph 17 of the Joint Venture Agreement. In the event payment is not received within said ten (10) day period, Lighthouse intends to exercise all rights available to it pursuant to the terms of the aforesaid paragraph 17."

18. By letter dated July 13, 1989, Robert Cimmino, on behalf of the debtor, replied that he was disappointed by plaintiff's threatened invocation of paragraph 17 of the Joint Venture Agreement. The debtor requested the plaintiff to withdraw in writing by noon of the next day the threat of invocation of paragraph 17 and to desist from attempting to divest the debtor of its interest in title to the property held by the parties as tenants in common. The plaintiff did not withdraw its invocation of the default notice contemplated under the Joint Venture Agreement.

19. It is clear that the debtor defaulted in performing numerous obligations under the Joint Venture Agreement. Such defaults included:

(a) Misrepresentations as to payments allegedly made by the debtor, such as engineering costs of $7,300.00, well drilling costs of $15,200.00 and surveying costs of $7,200.00.

(b) Failure to pay the principal payments on the Hurd mortgage when they fell due.

(c) Failure to pay the legal expenses due to the plaintiff's attorneys for services rendered in connection with the drafting of the Joint Venture Agreement and the closing of title.

(d) Failure to obtain final municipal subdivision approval within one year as required under the Joint Venture Agreement.

(e) The debtor failed to provide the fifteen days prior written notice to the plaintiff as required under the Joint Venture Agreement to obtain an additional one year extension to obtain final municipal subdivision approval. At the time the initial one year period expired, the debtor was already in default under the Joint Venture Agreement.

20. Robert Cimmino admitted in his deposition that when he wrote the letter on behalf of the debtor to the plaintiff on July 13, 1989, the debtor was in default of the principal mortgage payment due to Cynthia Hurd on June 30, 1989.

## DISCUSSION

■ This adversary proceeding illustrates an important and fundamental exception to the automatic stay which is not listed among the specific exceptions delineated under 11 U.S.C. § 362(b). Any action to recover property, to collect money, to enforce a lien, or to assert a prepetition claim against the debtor which would otherwise be enjoined by 11 U.S.C. § 362(a) if initiated in any other context, is not subject to the automatic stay if commenced in the bankruptcy court where the debtor's bankruptcy case is pending. *In re American Sports Innovation ASI*, 105 B.R. 614, 617 (Bankr.W.D.Wash.1989); *In re Vylene Enterprises, Inc.*, 63 B.R. 900, 907 (Bankr.C. D.Cal.1986); *In re American Spinning Mills, Inc.*, 43 B.R. 365, 367 (Bankr.E.D.Pa. 1984).

■ The automatic stay is intended as an umbrella to protect a debtor temporarily from the shower of law suits and collection efforts by creditors outside the bankruptcy court administering the debtor's case in order to afford the debtor a breathing spell for the purpose of concentrating on the financial, rehabilitative and distributive procedures applicable in the bankruptcy court where the debtor's case is pending. H.R.Rep. No. 595, 95th Cong., 1st Sess. 174–175 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49–50 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6134–6136, 5835–5836. The automatic stay was never intended to bar the bankruptcy court from exercising its statutory mandate to determine and allow claims and interests pursuant to 11 U.S.C. §§ 501 and 502; to determine the value of liens and other secured interests in property in accordance with 11 U.S.C. § 506; or to decide dischargeability suits against the debtor and to enter judgments for amounts found to be nondischargeable under 11 U.S.C. § 523. Indeed, in addition to its authority to hear and determine any and all core proceedings described in 28 U.S.C. § 157(b)(1), the bankruptcy court is expressly authorized to determine actions against the debtor and others which might be otherwise related to a case under title 11, as provided under 28 U.S.C. § 157(c)(1). Hence, the plaintiff's proceeding against the debtor in the instant case to enforce the power of attorney accompanying their Joint Venture Agreement and to obtain a conveyance of the debtor's interest in such property, is not enjoined under 11 U.S.C. § 362 from proceeding in this court. .

■ The debtor argues that when it admittedly defaulted under the Joint Venture Agreement by failing to pay the principal sum due on December 31, 1988 to Cynthia Hurd, the vendor of the real estate in question, the default was waived by the debtor's joint venture partner, Lighthouse, when Lighthouse paid Hurd the amount then due. That Lighthouse chose to preserve its interest in the joint venture does not mean that the debtor was relieved of its obligation to pay the subsequent amounts it agreed to pay to Hurd. Therefore, when the debtor again defaulted by failing to make the required semi-annual payments to Hurd due June 30, 1989 and December 30, 1989, Lighthouse cannot be required to assume the debtor's obligation for those payments as well. Therefore, Lighthouse was entitled to demand on July 12, 1989 that unless the debtor paid the defaulted semi-annual payment due Hurd on June 30, 1989, along with other obligations, within 10 days of such demand, Lighthouse would be entitled to invoke the default clause in the Joint Venture Agreement. The debtor was unsuccessful in persuading Lighthouse to retract its 10–day default notice.

■ Despite its default in paying the additional sums due to Hurd for the purchase of her real estate and despite its failure to obtain final approval of the subdivision application, the debtor contends that it effectively exercised the extension right afforded it under paragraph # 12 of the Joint Venture Agreement. On June 16,

1989, the debtor wrote to Lighthouse that "this is to advise you that we want to continue with the project after August 30, 1989." Although paragraph # 12 gives the debtor the right to extend the contract upon fifteen days prior written notice, not only was the debtor's letter more than fifteen days before the expiration date on August 30, 1989, but the debtor was in default and ineligible from exercising any renewal right because renewal was permitted under paragraph # 12 "provided Atreus is not in default or threatened default under this Agreement at the time of the written notice....".

## FORFEITURE

■ Paragraph # 12 of the Joint Venture Agreement provides that in the event of the debtor's default under the Agreement, Lighthouse may exercise a power of attorney and execute a bargain and sale deed conveying the real estate in question to itself. In such event, the Joint Venture Agreement provides that the debtor shall not have any further rights or interests in the premises, nor right to a refund or repayment of all advances previously made. The effect of this clause is to divest the estate and its creditors of any interest of the debtor in the property, notwithstanding advances previously made.

In contrast to this forfeiture provision paragraph # 14 of the Joint Venture Agreement provides that if without fault on the part of either the debtor or Lighthouse, the municipal boards deny or fail to approve the subdivision application within the contract term, the parties agree to place the premises on the open market for sale at an all cash price to be agreed upon by the parties, or if they fail to agree upon the price, at a price determined by independent appraisers appointed in accordance to the provisions of the Joint Venture Agreement. In the instant case there was no evidence that the municipal boards refused to grant the debtor's subdivision application because of any fault on the part of either the debtor or Lighthouse.

Accordingly, in order to preserve property of the estate for the benefit of the creditors of this estate, the court will apply the provisions of paragraph # 14 of the Joint Venture Agreement, rather than permitting a forfeiture of the debtor's estate at the expense of its creditors. It would be inequitable to permit the debtor's estate to lose all right to receive whatever interest the debtor may have in the premises and to forfeit all previous advances without any possibility of a refund.

■ Under New York law, forfeitures of land sale contracts are not favored because "the interest of the parties ... can only be determined by a sale of the property after foreclosure proceedings with provisions for disposing of the surplus or for a deficiency judgment." *Bean v. Walker*, 95 A.D.2d 70, 464 N.Y.S.2d 895 (4th Dept.1983). It is only where the defaulting party abandoned possession and that other party retook possession and made substantial improvements that the courts will condone a forfeiture. *Havens v. Patterson*, 43 N.Y. 218 (1870).

■ Lighthouse may not effect a post-petition transfer of the debtor's interest in the property in question in accordance with the power of attorney provision in the Joint Venture Agreement because such a transfer without authorization by this court would violate 11 U.S.C. § 549 which bars any unauthorized post-petition transfers of property of the estate. The consequences of such a transfer would be tantamount to delivering to one creditor substantially all of the debtor's property without a confirmed plan of reorganization and in contravention of the rules for distribution of property of the estate as delineated in 11 U.S.C. § 726. If the debtor's Chapter 11 case were to be converted to a case under Chapter 7 of the Bankruptcy Code, the trustee in bankruptcy would be obligated to liquidate the debtor's property and dispose of the proceeds in accordance with the distribution scheme outlined in 11 U.S.C. § 726, with the result that Lighthouse would not be entitled under the Bankruptcy Code to acquire the debtor's major asset in disregard of the rights of the other creditors of this estate.

348

The provision in paragraph # 14 of the Joint Venture Agreement is consistent with the liquidation provisions of the Bankruptcy Code and is consistent with the rights of secured claims, including those of the mortgagee, Cynthia Hurd. Indeed, if Cynthia Hurd is entitled to foreclose on her mortgage, such foreclosure would not deprive the debtor of any potential equity in the property, assuming that the property value exceeds Hurd's secured claim.

Hence, Lighthouse is entitled to a declaratory judgment that the debtor has defaulted under the Joint Venture Agreement and that the property should be sold in accordance with the provisions in paragraph # 14 of the Joint Venture Agreement, subject to the rights of secured claims against such property.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(E) and (K).

2. Lighthouse has established that the debtor has defaulted under their Joint Venture Agreement, dated August 30, 1988.

3. Lighthouse is entitled to invoke the provisions of paragraph # 14 of the Joint Venture Agreement and require that the property in question be sold in accordance with paragraph # 14, subject to the rights of secured claims against the property.

4. Lighthouse may not exercise the prepetition power of attorney issued to it by the debtor in order to convey the property in question to Lighthouse because such relief would violate 11 U.S.C. §§ 549 and 726.

SETTLE ORDER on notice.