In re Thomas Garcia MONTES
and Margaret Lourdes
Montes, Debtors.

Mary LUCERO, Plaintiff,

v.

Thomas G. MONTES, Margaret
L. Montes, Defendants.

Bankruptcy No. LA 93–33701 AG.
Adv. No. LA 93–03853 AG.

United States Bankruptcy Court,
C.D. California.

July 7, 1994.

Donald E. Rinaldi, West Covina, CA, for debtors/defendants Thomas Garcia Montes and Mary Lourdes Montes.

Shapleigh H. Kimes, Newport Beach, CA, for plaintiff Mary S. Lucero.

## MEMORANDUM OF DECISION

ARTHUR M. GREENWALD, Bankruptcy Judge.

### NATURE OF PROCEEDINGS

The Debtors and Defendants, Thomas Garcia Montes and Margaret Lourdes Montes (Debtors), filed a joint voluntary Chapter 7 petition for relief on July 2, 1993. Pursuant to 11 U.S.C. § 341(a), the first meeting of creditors was held on August 4, 1993.

Mary Lucero (Mrs. Lucero) commenced the instant adversary proceeding on October 4, 1993 by filing a complaint against Debtors alleging that certain pre-petition debts were non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). More specifically, Mrs. Lucero alleges that her home was refinanced rather than purchased by the Debtors, that Debtors held the property in trust for her benefit, and that Debtors breached that trust when they sold the property and kept the proceeds. Mrs. Lucero has requested compensatory and punitive damages. Debtors filed their answer to the complaint on November 5, 1993 asserting laches and the statute of limitations as affirmative defenses. Debtors have requested that Mrs. Lucero take nothing by her complaint.

Debtors received their discharge on February 23, 1994. While the Chapter 7 proceeding was in progress, Debtors filed a joint voluntary Chapter 13 petition for relief on March 23, 1994. A non-jury trial was held by this court regarding the instant adversary proceeding on May 2, 1994 and thereafter submitted.

On June 2, 1994, the Clerk of the Court inadvertently issued an order closing the Chapter 7 case. In the interests of justice, the court vacated that order, permitting it to render the instant decision in this adversary action.

The court, having considered the record before it, including the testimony and documents received in evidence, the various memoranda and briefs filed by the parties, and the statements and arguments of counsel, files this Memorandum of Decision, which, pursuant to Rule 7052(a), Fed.R.Bankr.P. and Rule 52(a), Fed.R.Civ.P., shall constitute this court's Findings of Fact and Conclusions of Law.

### JURISDICTION AND VENUE

This court has jurisdiction over this adversary proceeding to determine non-dischargeability pursuant to 28 U.S.C. § 157(b)(2)(I).

Venue lies within the Central District of California pursuant to 28 U.S.C. § 1409(a), as the Debtors filed their Chapter 7 petition in the Central District of California.

### STATEMENT OF FACTS

Mrs. Lucero is in her late 70's. She is the mother of defendant Margaret Montes and the mother-in-law of defendant Thomas Montes. She is also the mother of Carol Lucero, Freida Lucero, Peggy Lucero, Dan-

ny Lucero, Tony Lucero and Joe S. Lucero, Jr.

Mrs. Lucero and her husband, Joseph A. Lucero, acquired title to real property commonly known as 6707 Keltonview Drive, Pico Rivera, California (Property) in January, 1965. She and her husband lived together at the property until Mr. Lucero's death in December, 1985. Mrs. Lucero continued to reside at the property from the time of Mr. Lucero's death until the property was sold in March, 1991. Her daughters Carol Lucero, Freida Lucero and Peggy Lucero also resided at the property from December, 1985 until March 1991.

Prior to 1985, Mrs. Lucero and her husband encumbered the property. After experiencing financial difficulties, Mrs. Lucero and her husband defaulted on the obligations secured by certain deeds of trust against the property. Consequently, the loan obligation went into foreclosure and the property was in danger of being lost in December of 1985. Joseph Lucero became ill during this period and died on December 30, 1985.

In the midst of the impending foreclosure, the death of Mr. Lucero, and the financial difficulties of Mrs. Lucero, the Debtors agreed to purchase the property from Mrs. Lucero. Debtors were the only family members with a sufficient credit rating to acquire a loan on the property. The Debtors further acknowledged that Mrs. Lucero and other family members then living at the property could continue to live at the property. Mrs. Lucero and/or the other family members living at the property were to pay the new mortgage payments, pay the taxes and maintain the home.

In order to facilitate the purchase transaction, it was agreed that Debtors and Carol Lucero would take title to the property as purchasers and apply for a new loan. Carol Lucero was placed on the title and the loan agreement so that Debtors could obtain a lower interest rate and lower down payment.

Escrow was opened in December, 1985. In February, 1986, Mrs. Lucero deeded title to Debtors and Carol Lucero, all as joint tenants. Debtors and Carol Lucero obtained a new loan. The existing loan obligation of approximately $68,000 was paid off.

Over the succeeding years, Mrs. Lucero and/or the other family members living at the property had difficulty maintaining the mortgage payments. Mrs. Lucero and her son, Danny Lucero, contracted with a real estate broker to list the property on the market for sale. Debtors voided the listing agreement, found another real estate agent, and contracted to sell the property.

Carol Lucero quitclaim deeded the property to Debtors in July or August, 1990 for no consideration. Subsequently, on March 6, 1991, the property was sold for a purchase price of $148,000. After the sale, Mrs. Lucero and other family members were no longer permitted to reside at the property.

Proceeds from the sale of the property totaled $75,882.79. Debtors offered to give Mrs. Lucero and other family members $28,000 from the proceeds of sale to help relocate. Joe Lucero, Jr., acting on behalf of his mother and other family members, refused the $28,000 payment. There were no discussions or agreements between Mrs. Lucero and Debtors as to what would happen if the property were sold or any disposition of sale proceeds. Debtors retained the entire sum of $75,882.79 from the March 6, 1991 sale.

## DECISION

### Violation Of 11 U.S.C. § 362(a)

The operation of the automatic stay in Debtors' Chapter 13 proceeding does not preclude this court from adjudicating the instant adversary proceeding, notwithstanding that Mrs. Lucero has not requested relief from stay in the Chapter 13 proceeding.

### Non–Dischargeability Pursuant To 11 U.S.C. § 523(a)(2)(A)

Mrs. Lucero has failed to establish false pretenses, a false representation, or actual fraud under § 523(a)(2)(A) by a preponderance of the evidence.

### Non–Dischargeability Pursuant To 11 U.S.C. § 523(a)(4)

Mrs. Lucero has failed to establish fraud or defalcation while acting in a fiduciary ca-

pacity under § 523(a)(4) by a preponderance of the evidence.

Mrs. Lucero has failed to establish embezzlement or larceny under § 523(a)(4) by a preponderance of the evidence.

### Non–Dischargeability Pursuant To 11 U.S.C. § 523(a)(6)

Mrs. Lucero has failed to establish willful and malicious injury under § 523(a)(6) by a preponderance of the evidence.

### Debtors' Affirmative Defenses

Mrs. Lucero's non-dischargeability complaint is not barred by laches or the statute of limitations.

## DISCUSSION

### The Standard Of Proof Required For The 11 U.S.C. § 523(a) Dischargeability Exceptions Is Preponderance Of The Evidence

■ The United States Supreme Court in the case of *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755, 767 (1991), held that the preponderance of the evidence standard is to be applied to the dischargeability exceptions prescribed in § 523(a).

### This Court Is Not Precluded From Proceeding With The Instant Adversary Proceeding, As The Prosecution Of A Non–Dischargeability Action Does Not Violate The Automatic Stay

■ At the trial in the instant non-dischargeability proceeding, Debtors contended that the automatic stay provisions of § 362(a) were violated by proceeding with this action without Mrs. Lucero acquiring relief from stay in their Chapter 13 case. Debtors assert that this court is precluded from proceeding with the instant non-dischargeability action as the stay provisions of § 362(a) apply. Debtors, however, cite no case authority to support this position. Debtors rely

exclusively on the statutory language of § 362(a).[1]

This court is not persuaded by Debtors' argument and determines that the automatic stay arising in Debtor's Chapter 13 proceeding does not preclude this court from adjudicating the instant Chapter 7 adversary proceeding, though Mrs. Lucero has not requested, nor been granted, relief from stay in the Chapter 13 proceeding.

■ In the case of *In re American Spinning Mills, Inc.,* 43 B.R. 365, 367 (Bankr. E.D.Pa.1984), the court held that a creditor may file a counterclaim against the debtor in bankruptcy court without requesting relief from the automatic stay. In reaching this conclusion, the court explained that:

> "Although 362(a) generally bars all debt collection efforts against the debtor or the property of his bankruptcy estate after the filing of the petition, the stay implicitly does not bar a party from commencing an adversary or contested proceeding against the debtor under the caption of the bankruptcy case in the court where the petition is pending."

*Id.*

This principle was acknowledged by the Ninth Circuit Bankruptcy Appellate Panel in the case of *In re Watson,* 78 B.R. 232, 235 (9th Cir. BAP 1987), wherein the court held that the automatic stay did not preclude a creditor from executing on a non-dischargeability judgment rendered by the bankruptcy court upon property of the debtor which is not property of the estate. In arriving at its decision, the court "recognized that a creditor may proceed with an action to hold its debt non-dischargeable in the bankruptcy court without violation of the automatic stay provisions of Section 362." *Id.* at 233.

In the case of *In re American Sports Innovations ASI,* 105 B.R. 614, 615 (Bankr. W.D.Wash.1989), a business owned by the

---

1. § 362(a) provides in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 USC 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. . . .

debtor filed a Chapter 11 proceeding. Subsequently, the debtor filed an individual Chapter 11 bankruptcy case. The plaintiff filed an adversary proceeding in the business Chapter 11 proceeding seeking, among other things, non-dischargeability of any money judgement for conversion against defendants, including the individual Chapter 11 debtor. The individual Chapter 11 debtor argued that he should be dismissed from the action since plaintiff had failed to obtain relief from the automatic stay in the individual's bankruptcy case before filing the adversary proceeding. The court rejected this argument and stated in part that "[t]he Court is unaware of any case law which holds that a plaintiff must obtain relief from stay prior to filing a dischargeability complaint." *Id.* at 617.

The courts in *American Spinning Mills* and *Watson,* as well as *American Sports Innovations* have recognized that the automatic stay does not apply to adversary proceedings commenced against the debtor in the bankruptcy court where the debtor's bankruptcy case is pending. *See also In re North Coast Village, Ltd.,* 135 B.R. 641 (9th Cir. BAP 1992) (automatic stay did not prevent adversary proceedings against debtor in bankruptcy court in which debtor's bankruptcy was pending); *In re Vylene Enterprises, Inc.,* 63 B.R. 900 (Bankr.C.D.Cal.1986) (adversary proceeding against debtor seeking injunction, filed in court where bankruptcy case is pending, is not subject to automatic stay, and may be heard without obtaining relief from automatic stay).

In addition to the case authorities cited herein, this court's determination is also supported by reference to 11 U.S.C. § 523(c) and Rule 7001(6), Fed.R.Bankr.P., which authorizes creditors to bring non-dischargeability actions against the debtor. As one court has pointed out "[a]s a matter of law, then, a non-dischargeability action can never violate the automatic stay." *In re Hodges,* 83 B.R. 25, 26 (Bankr.N.D.Cal.1988).

### Mrs. Lucero Has Failed To Establish By A Preponderance Of The Evidence The Requisite Elements Under § 523(a)(2)(A) To Render A Debt Non–Dischargeable

Section 523(a)(2)(A) provides in full:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

 To establish that a debt is non-dischargeable under § 523(a)(2)(A), a creditor must establish that (1) the debtor made a representation; (2) at the time the representation was made the debtor either knew it was false or made it with such reckless disregard for the truth to constitute willful misrepresentation; (3) the representation was made with the intent to deceive; (4) the creditor justifiably relied on the representation; and (5) the creditor suffered loss as a result of the misrepresentation. *In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978); *In re Britton,* 950 F.2d 602, 604 (9th Cir.1991); *In re Kirsh,* 973 F.2d 1454, 1456 (9th Cir.1992).

Mrs. Lucero alleges that title to the property was transferred to Debtors in reliance on Debtors promise that they would obtain new financing on the property, that they would hold the property in trust for Mrs. Lucero until she wished to sell it, and that Debtors would transfer the money derived from the sale of the property to Mrs. Lucero.

Mrs. Lucero has not established by a preponderance of the evidence that Debtors made any of the representations alleged above. This court finds that title to Mrs. Lucero's property was transferred to Debtors in reliance on Debtors' promise that Mrs. Lucero and other family members could continue to reside in the property so long as she and/or other family members made the mortgage payments on the new loan. After the loan became delinquent, the property was sold. There were no discussions or agreements as to the disposition of the sale proceeds. Mrs. Lucero was not upset that she did not receive any of the sales proceeds; rather, she was distressed that she could no longer reside at the property.

This court finds that Debtors made no representations that they knew were false or were made with such reckless disregard for the truth so as to constitute willful misrepresentations. Mrs. Lucero has failed to carry her burden of proof under § 523(a)(2)(A). Accordingly, this court finds that Mrs. Lucero has not established by a preponderance of the evidence the requisite elements under § 523(a)(2)(A) to enable this court to render the debt non-dischargeable.

### Mrs. Lucero Has Not Established Fraud Or Defalcation While Acting In A Fiduciary Capacity Pursuant to § 523(a)(4) By A Preponderance of the Evidence

Section 523(a)(4) provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity. . . .

■ Mrs. Lucero alleges that Debtors' conduct gives rise to a resulting trust and/or a constructive trust that renders Mrs. Lucero's debt non-dischargeable.

■ It is a well settled rule of law in the Ninth Circuit that the term "fiduciary capacity" under § 523(a)(4) has been limited to technical or express trusts and not to trusts which are imposed by operation of law. *In re Thornton*, 544 F.2d 1005, 1007 (9th Cir. 1976); *In re Cooper*, 30 B.R. 484, 489 (9th Cir. BAP 1982). Resulting trusts and constructive trusts arise by operation of law. 60 CAL.JUR.3RD *Trusts* §§ 260, 287 (1980). Therefore, Mrs. Lucero must establish that an express trust exists in order for this court to find the debt non-dischargeable as a "fraud or defalcation while acting in a fiduciary capacity."

■ The Ninth Circuit Court of Appeals noted that "[t]he general characteristics of an express trust are 1) sufficient words to create a trust; 2) a definite subject; and 3) a certain and ascertained object or res." *Thornton*, 544 F.2d at 1007. Further, the court stated that "[t]he intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust." *Id.*

Mrs. Lucero has not established the existence of an express trust. The purchase transaction in this case created a contractual rather than a trust relationship. Debtors were not acting in a fiduciary capacity as no trust relationship was ever created. Moreover, Debtors conduct does not rise to the level of fraud or defalcation. This court finds that Mrs. Lucero has not established "fraud or defalcation while acting in a fiduciary capacity" by a preponderance of the evidence.

### Mrs. Lucero Has Not Established Embezzlement Or Larceny Pursuant To § 523(a)(4) By A Preponderance Of The Evidence

Section 523(a)(4) provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for . . . embezzlement, or larceny. . . .

■ Under federal law, embezzlement in the context of nondischargeability requires three elements: " '(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud.' " *In re Littleton*, 942 F.2d 551, 555 (9th Cir.1991) (citing *In re Hoffman*, 70 B.R. 155, 162 (Bankr. W.D.Ark.1986); *In re Schultz*, 46 B.R. 880, 889 (Bankr.D.Nev.1985)). Embezzlement does not require the existence of a fiduciary relationship. *Id.* (citing *In the Matter of Shuler*, 21 B.R. 643 (Bankr.D.Idaho 1982); *In re Talcott*, 29 B.R. 874, 878 (Bankr.D.Kan. 1983)).

■ Larceny is the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner. 3 COLLIER ON BANKRUPTCY ¶ 523.14[3] (15th ed. 1993). Larceny is distinguished from embezzlement in that the original taking of the property was unlawful. *Id.*

This court finds that Debtors purchased Mrs. Lucero's property. The purchase was effectuated to save the property from im-

pending foreclosure and provide Mrs. Lucero and other family members with a place to live. No fraudulent or wrongful taking occurred. Debtors became the rightful owners of the property when Mrs. Lucero deeded the property to Debtors in February, 1986.

Mrs. Lucero has not established the elements of embezzlement or larceny by a preponderance of the evidence. Accordingly, this court is precluded from rendering a nondischargeability judgment pursuant to § 523(a)(4).

### Mrs. Lucero Has Not Established Willful And Malicious Injury Pursuant To § 523(a)(6) By A Preponderance Of The Evidence

Section 523(a)(6) provides in full:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

The Ninth Circuit Court of Appeals set forth the standard for "willful and malicious injury" in the case of *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986) as follows:

> "When a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause. or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure."

*Id.* at 1443. *See also In re Britton*, 950 F.2d at 605.

This court finds that Mrs. Lucero has failed to establish by a preponderance of the evidence that Debtors' conduct was willful and malicious. Debtors' did not engage in any intentional wrongful act that necessarily produced harm to Mrs. Lucero. Further, Debtors' conduct was not without just cause or excuse.

### The Instant Nondischargeability Action Is Not Barred By Laches Or The Applicable Statute Of Limitations

During these proceedings the Debtors raised by way of affirmative defenses laches and the statute of limitations.

Rule 4007(c) prescribes, in pertinent part, that "A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed no later than sixty days following the first date set for the meeting of creditors pursuant to § 341(a)."

In the instant case, Mrs. Lucero's nondischargeability complaint was filed on October 4, 1993. The first meeting of creditors was held on August 4, 1993. Neither the asserted defenses of laches or statute of limitations have merit as Mrs. Lucero's complaint was filed within the period of time prescribed in Rule 4007(c).

### JUDGMENT

The non-jury trial on plaintiff Mary Lucero's action against Thomas G. Montes and Margaret L. Montes for non-dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6) was held by this court on May 2, 1994 at 9:00 a.m. The court, having considered the record before it, including the testimony and documents received in evidence, as well as the arguments of counsel, and having filed concurrently its Memorandum of Decision, **IT IS ORDERED AND ADJUDGED** that the plaintiff take nothing and that the action be dismissed on the merits.