**In re J.T. MORAN FINANCIAL CORP., J.T. Moran & Co., Inc., and Moore & Schley, Cameron & Co., Debtors.**

**J.T. MORAN FINANCIAL CORP.,
a Delaware Corporation,
Plaintiff–Counter–Defendant,**

v.

**AMERICAN CONSOLIDATED FINANCIAL CORPORATION, a Delaware Corporation, and Overland Insurance Company Limited, a Cayman Islands Corporation, Defendants–Counter–Claimants.**

Nos. 90–B–20078 (HS), 90–B–20086 (HS), 90–B–20087 (HS) and 90 Civ. 5971 (GLG).
Adv. No. 90 ADV. 6060.

United States District Court,
S.D. New York.

Feb. 21, 1991.

Bryan, Cave, McPheeters & McRoberts, New York City, for defendants-counter-claimants.

Scheffler Karlinsky & Stein, New York City, for plaintiff-counter-defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Defendants have filed objections to the proposed findings and conclusions of the Hon. Howard Schwartzberg, United States Bankruptcy Judge, *dated January 7, 1991.* Defendants had moved in the District Court for a withdrawal of the reference to the bankruptcy court and to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P. This court had, by order dated December 14, 1990, referred

the motion pursuant to 28 U.S.C. § 157(d) to the bankruptcy court to submit proposed findings and recommendations with respect to the motion. The bankruptcy judge recommends granting the motion with respect to the withdrawal of reference.[1] Defendants, of course, agree with that recommended resolution since they had so moved. They do, however, take issue with the bankruptcy court's treatment of personal jurisdiction and object to certain factual statements which they claim are incorrect and prejudicial. This court must make a *de novo* review of the bankruptcy judge's proposed findings and conclusions. Bankruptcy Rule 9033(d).

With respect to the objection to certain of the proposed findings, we see that as much ado about nothing. Certain of the findings are merely meant to recite the issues set forth in the plaintiff's complaint in this adversary proceeding. Other findings such as whether AmCo or Overland issued the surplus notes to the plaintiff and whether the notes were unconditional are matters totally irrelevant to the questions of withdrawal and jurisdiction. The court does not, therefore, see any need to consider or adopt those findings as they relate to the conclusion of law concerning jurisdiction.

■ Turning to the more important question of jurisdiction, the defendants argue that if this case had been brought outside the context of a bankruptcy proceeding, they would not have been subject to personal jurisdiction in this state in either federal or state court, since it is claimed that the defendants had insufficient minimum contacts with the forum so as to satisfy C.P.L.R. 302(a)(1) and the due process clause of the Fourth Amendment. However, Rule 7004(d) of the Bankruptcy Rules confers personal jurisdiction over parties in adversary proceedings before the bankruptcy court. Consequently, the defendants seek to have this court declare the rule unconstitutional. They offer a convoluted argument that the bankruptcy rule is unconstitutional in actions based on state law claims which are non-core cases, regardless of whether the rule confers personal jurisdiction in the bankruptcy court or the district court. They state that this is not an argument in favor of different jurisdictional standards in the bankruptcy court than in the district court.

Despite defendants' objections, we think it clear that under 28 U.S.C. § 1334(d) the court has exclusive jurisdiction over the property of the plaintiff. In a Chapter 11, it has nationwide personal jurisdiction over the defendants. *Diamond Mortgage Corp. of Ill. v. Sugar*, 913 F.2d 1233 (7th Cir. 1990) pet. cert. pending. Rule 7004(d) does not distinguish between core and non-core cases. It is true that this leads to something of an anomaly where the court gets bankruptcy jurisdiction over the defendants but then withdraws the reference putting the matter back in district court where the defendants might not have been susceptible to the court's jurisdiction initially absent the commencement of the bankruptcy proceeding. However, the situation is not very different from a defendant who is sued in an inconvenient forum and claims that the court in that forum lacks personal jurisdiction over it. The district court can, without deciding the issue of jurisdiction, transfer the case to the defendant's home venue where it might have been brought at the outset. 28 U.S.C. § 1406. There is nothing in the bankruptcy court's proposed findings and conclusions which even implies that the defendants are to be compelled to remain in this forum. If they wish to make a motion to transfer that motion can be considered on its independent merits.

For the foregoing reasons, the court adopts the findings (to the extent material) and the conclusions of the bankruptcy judge regarding the motion to withdraw the reference, and grants the withdrawal, but denies the motion to dismiss for lack of jurisdiction.

SO ORDERED.

---

**1.** No objections have been received from the plaintiff with respect to the withdrawal of the reference.

PROPOSED FINDINGS AND CONCLU-
SIONS REGARDING WITHDRAWAL
OF REFERENCE

HOWARD SCHWARTZBERG, Bankruptcy
Judge.

The defendants in this adversary pro-
ceeding, American Consolidated Financial
Corporation ("AMCO") and Overland Insur-
ance Company Limited ("Overland") have
filed a motion with Judge Gerard L. Goet-
tel, in the United States District Court for
the Southern District of New York, to with-
draw the reference of the adversary pro-
ceeding and, upon such withdrawal, to dis-
miss the complaint for lack of jurisdiction
because the defendants are not amenable
to personal jurisdiction in New York. The
plaintiffs are J.T. Moran Financial Corp.
("JTMFC"), and its two affiliated entities,
J.T. Moran & Co., Inc. and Moore & Schley,
Cameron & Co. JTMFC is a debtor in
possession, having filed with this court a
petition for reorganizational relief under
Chapter 11 of the Bankruptcy Code on Jan-
uary 29, 1990, the same day that its affil-
iate, J.T. Moran & Co., Inc. filed a similar
Chapter 11 petition with this court.

In accordance with an order dated De-
cember 14, 1990, Judge Goettel referred to
this court the defendants' motion for a
withdrawal of the reference pursuant to 28
U.S.C. § 157(d) with instructions to submit
proposed findings and recommendations
with respect to the withdrawal motion.

### Proposed Findings

1. Defendant AMCO is a Delaware cor-
poration with its principal place of business
in Overland Park, Kansas. AMCO has a
wholly-owned subsidiary corporation
known as CCDC Financial Corporation
("CCDC").

2. Defendant Overland is an insurance
company and a Cayman Island corporation.
Overland is a wholly-owned subsidiary of
CCDC, which, in turn, is a wholly-owned
subsidiary of defendant, AMCO.

3. The debtor JTMFC, was an under-
writer and was engaged in the securities
business.

4. In June of 1989, AMCO acquired a
20% equity position in the debtor, JTMFC,
by tendering certificates of mortgage par-
ticipation which bore interest at the rate of
10% per annum for approximately 4,500,000
shares of JTMFC stock. In August of
1989, AMCO issued to JTMFC certain note
instruments known as surplus notes (the
"surplus Notes"), bearing interest at the
rate of 8% per annum, on a quarterly basis,
in substitution for the mortgage partic-
ipation certificates which were not suffi-
ciently liquid to serve as collateral for oth-
er financing by the debtor, JTMFC.

5. The surplus notes were issued to the
debtor by defendants AMCO and Overland
before January 29, 1990, when the debtor
filed its Chapter 11 petition with this court.
The surplus notes constitute unconditional
prepetition obligations of the defendants
for the payment of money to the debtors.

6. The defendant's initial nonpayments
under the notes occurred prepetition, but
the overwhelming preponderance of the in-
terest and principal claimed by the debtor
arose as a result of post-petition nonpay-
ments. Debtor, JTMFC, asserts that each
nonpayment by defendants gives rise to a
separate claim.

7. On May 17, 1990, debtor, JTMFC
commenced an adversary proceeding in the
Bankruptcy Court for the Southern District
of New York, for the past due interest on
the surplus notes issued by the defendants.
JTMFC also seeks a declaratory judgment
to determine the total liability on the notes.

8. The defendants filed substantially
similar answers raising issues as to fraud,
estoppel, waiver and other defenses. Addi-
tionally, the defendants counterclaimed
against debtor, JTMFC, asserting statutory
fraud involving federal and state securities
laws, common law fraud, and breach of
contract. In their counterclaims, the de-
fendants seek compensatory and punitive
damages, including relief cancelling the
notes because of the debtor's alleged fraud
and other violations.

9. In their answers, the defendants
have demanded a jury trial on all issues.

10. Although the defendants filed coun-
terclaims to the debtor's adversary com-

plaint, they have not filed any proofs of claims against any of the debtors with respect to the subjects referred to in their counterclaims.

11. In its adversary complaint, the debtor states that this is a non-core adversary proceeding within the meaning of 28 U.S.C. § 157(c)(1). Although the debtor alleged in the complaint that its adversary proceeding was non-core, it did not state that it "does or does not consent to entry of final orders or judgment by the bankruptcy judge" as expressly directed under Bankruptcy Rule 7008(a).

12. The defendants contend that since neither the debtor nor the defendants consented to the entry of final orders or judgment by the bankruptcy judge, the bankruptcy court lacks subject matter jurisdiction to enter any final orders or judgment in this proceeding, citing 28 U.S.C. § 157(c)(1). Accordingly, the defendants reason that if the reference is not withdrawn any trial before the bankruptcy court would require *de novo* review by the district court, resulting in duplicative and wasteful litigation, especially since the defendants demanded a jury trial.

### Discussion

A bankruptcy judge is directed pursuant to 28 U.S.C. § 157(b)(1) to hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, and may enter final orders and judgments with respect to such proceedings. If the proceeding is noncore, but otherwise related to a case under title 11, a bankruptcy judge has jurisdiction to hear, but not determine, or enter final orders and judgments in such noncore proceedings. Additionally, in these nonconsensual related proceedings, the bankruptcy judge is mandated under 28 U.S.C. § 157(c)(1) to submit proposed findings of fact and conclusions of law to the district court, subject to *de novo* review for the entry of a final order or judgment by the district court.

However, if the proceeding is noncore, but related to a case under Chapter 11, with the consent of all the parties, and

pursuant to the comprehensive reference to the bankruptcy court of all bankruptcy cases and proceedings related to bankruptcy cases, as expressed in 28 U.S.C. § 157(a), the bankruptcy court may determine and enter final orders and judgments in the non-core related proceedings in accordance with 28 U.S.C. § 157(c)(2). In any event, the district court may withdraw the reference, in whole or in part, of any core or non-core proceeding referred to in 28 U.S.C. § 157, on its own motion or on timely motion of any party for cause shown, as authorized under 28 U.S.C. § 157(d). Thus, when any party moves timely for the withdrawal of the reference, cause must be shown before the reference can be withdrawn. *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir.1990). In the instant case, there is no dispute that the defendant's motion for withdrawal of the reference was timely.

The defendants in this case contend that cause exists for withdrawing the reference with respect to the debtor's adversary proceeding to collect interest claimed under the surplus notes which the defendants issued to the debtor before the filing of the debtor's Chapter 11 petition. The defendants maintain that withdrawal of the reference is required because the debtor's adversary proceeding against them is a prepetition contract action which is non-core in nature and with respect to which the defendants did not file any proofs of claim and in which action they timely demanded a jury trial.

The debtor does not contend that the bankruptcy court has authority to conduct a jury trial in a non-core proceeding without the consent of the defendants. However, the debtor argues that the instant action involves a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(E), in that this is a turnover proceeding whereby the debtor seeks to recover interest under separate quarterly installments that become due after the debtor filed its Chapter 11 petition. Additionally, the debtor asserts that the defendants consented to the trial of the adversary proceeding in the bankruptcy court by having filed counterclaims

which amount to a waiver of the right to seek a withdrawal of the reference.

### Core or Non–Core

The term "core" is not defined in 28 U.S.C. § 157(b)(2), which delineates fifteen nonexclusive proceedings which may be regarded as comprising the core of bankruptcy administration. Core proceedings are generally defined as matters arising under title 11, or arising in a case under title 11 and which would have no existence outside of the bankruptcy case. *Diamond Mortgage Corp. of Ill. v. Sugar (In re Sugar)*, 913 F.2d 1233, 1239 (7th Cir.1990); *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987); *In re J.T. Moran Financial Corp.*, 119 B.R. 447, 450 (Bankr.S.D.N.Y. 1990). A core proceeding must invoke a substantive right provided by title 11. *In re J.T. Moran Financial Corp.*, 119 B.R. at 450; *Kolinsky v. Russ (In re Kolinsky)*, 100 B.R. 695, 701 (Bankr.S.D.N.Y.1989).

The debtor reasons that its prepetition contract action against the defendants is a core proceeding because nearly all of the causes of action with respect to the defendants' nonpayments arose after the debtor's Chapter 11 petition was filed. Accordingly, the debtor concludes that the proscription against a bankruptcy court's determination of a state law prepetition contract action, as held in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) was remedied by 28 U.S.C. § 157(b)(2) which was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), pursuant to which the bankruptcy court may hear and determine core proceedings. Therefore, the debtor concludes that if most of the breaches of the prepetition contract arose post-petition, the proceeding should be regarded as within the pale of the bankruptcy court's core jurisdiction.

Courts have held that certain post-petition transactions are matters concerning the administration of the bankruptcy estate within the meaning of 28 U.S.C. § 157(b)(2)(A) and should be treated as core proceedings. Thus, a post-petition contract entered into with the debtor in possession was regarded as a core matter in *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1399 (2d Cir. 1990) ("post-petition contracts with the debtor-in-possession, therefore, are integral to the estate administration from the date they are entered into."); *cert. granted,* —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), *vacated and remanded,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990). Similarly in *In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir.1987), a suit by a debtor to recover the remainder of the purchase price of assets sold after the filing of the petition was held to be a core matter. The *Arnold* court observed that

> [a] party who contracts with an apparently healthy company—a company that has not filed a petition in bankruptcy—may find it unpleasantly surprising to have to defend its prepetition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court. Parties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise.

815 F.2d at 170.

In the instant case, there were no post-petition transactions between the parties. It was probably a surprise to the defendants to learn that the debtor filed a Chapter 11 petition after they purchased the debtor's stock and contracted to make payments for such stock pursuant to the surplus notes in question. Indeed, the defendants have asserted in their counterclaims fraud on the part of the debtor as a basis for cancelling the surplus notes and terminating their liabilities with respect to the notes. The agreements involving the surplus notes were admittedly negotiated and entered into before the debtor filed its Chapter 11 petition. Thus, the instant proceeding involves prepetition agreements which the debtor claims were initially breached during the prepetition period, but

mainly breached post-petition when most of the quarterly interest payments came due. Hence, the alleged breaches straddle the filing date of the debtor's Chapter 11 petition.

■ In a case with a strikingly similar fact pattern, the Third Circuit Court of Appeals in *Beard v. Braunstein*, 914 F.2d 434 (3rd Cir.1990), held that prepetition contracts which are breached both prepetition and post-petition are not matters concerning the administration of the debtor's estate within the meaning of 28 U.S.C. § 157(b)(2)(A), with the result that even the post-petition breaches are entirely non-core matters related to a case arising under title 11. *Id.* at 434. In distinguishing between a core turnover proceeding and a non-core, state law contract action, the court applied the old summary-plenary test formerly applicable under the superseded Bankruptcy Act of 1898, and cited in *In re Lehigh and Hudson River Ry. Co.*, 468 F.2d 430, 433 (2d Cir.1972), for the proposition that "the bankruptcy court does not have summary jurisdiction to *enforce* a chose in action against the bankrupt's obligor even when the bankrupt's rights seem clear." *In re Lehigh and Hudson River Ry. Co.*, 468 F.2d at 433. Thus, if the money or property sought to be recovered is in the actual or constructive possession of the bankruptcy court, or the debtor-in-possession, or the trustee in bankruptcy, or a third person who makes no claim to the property, or where the third person's claim is colorable only, such money or property will be subject to the summary jurisdiction of the bankruptcy court so that a proceeding to obtain a turnover of the money or property will be characterized as a core proceeding. *Beard v. Braunstein*, 914 F.2d at 444–45.

### Turnover

■ Orders to turn over property of the estate are expressly characterized as core proceedings under 28 U.S.C. § 157(b)(2)(E). The debtor asserts that there is no dispute that the defendants issued the promissory notes and that the separate quarterly payments of interest at the specified rates were not made by the defendants and are now owed to the debtor as property of the estate, subject to a turnover proceeding, which is a core matter. Although the debtor argues that there is no disputed issue as to the defendants' liability for the specific interest payments, the debtor overlooks the fact that the defendants have asserted counterclaims seeking to cancel the notes for various reasons, including fraud. Thus, the defendants clearly dispute that they are liable for the amounts claimed. Where, as here, the court must resolve whether or not the debt claimed is due, the action to collect the disputed funds cannot be regarded as a turnover proceeding under the core jurisdiction of the bankruptcy court. *Charter Grade Oil Co. v. Exxon Co. U.S.A. (In re Charter Company)*, 913 F.2d 1575, 1579 (11th Cir.1990); *Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 172 (Bankr. E.D.N.Y.1986), *aff'd*, No. 86–0329, 1987 WL 47763 (E.D.N.Y. March 27, 1987).

■ Core jurisdiction cannot be found to exist in all collection cases when the debtor's right to the unpaid funds is disputed and not fixed until the debtor prevails in the litigation. That the amount in controversy is ascertainable is not decisive if the parties' rights regarding the underlying contract are conditioned upon the outcome of the contractual dispute. In other words, if the amount in question can be characterized as property of the estate only if the debtor prevails and not property of the estate if the defendants succeed on their counterclaims, there is no unconditional property of the estate subject to a turnover proceeding for core jurisdiction unless the debtor ultimately prevails in the action on the contract. *Acolyte Electric Corp. v. City of New York*, 69 B.R. at 172.

### Other Proceedings Affecting the Liquidation of Estate Assets

■ A "catch all" provision for core jurisdiction is set forth in 28 U.S.C. § 157(b)(2)(O) involving other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or

wrongful death claims. As in the case of a turnover proceeding, this subsection assumes that an asset of the estate is involved. The interest claimed by the debtor is disputed by the defendants as having arisen as a result of statutory and common law fraud. Unless and until the debtor prevails and successfully refutes the defendants' counterclaims, the court cannot regard the claimed funds as assets of the debtor's estate. To apply 28 U.S.C. § 157(b)(2)(O) to a disputed contract action because the debtor requires the funds, or because "the adjudication of all those claims are essential to the administration of the bankruptcy estate" would mean that the size or the impact of the claim should determine the constitutional separation between Article I treatment of core matters and Article III final determinations of non-core proceedings. The size of the asset or that it is essential to the estate is not the test. *In re Nanodata Computer Corporation*, 74 B.R. 766 (W.D.N.Y.1987); *Acolyte Electric Corp. v. City of New York*, 69 B.R. at 172–173. Manifestly, the debtor's action against the defendants does not involve the liquidation of existing estate assets or the adjustment of the debtor-creditor relationship between the parties. The debtor must first establish in this litigation that the defendants are undisputedly indebted to the debtor under the surplus notes in order for the debtor to establish that there is a debtor-creditor relationship between the parties within the meaning of 28 U.S.C. § 157(b)(2)(O).

### *The Defendants' Counterclaims*

■ Counterclaims by the estate against persons filing claims against the estate are regarded as core proceedings pursuant to 28 U.S.C. § 157(b)(2)(C). In the instant case, however, the counterclaims were not filed by the debtor, but were filed by the defendants against the debtor's estate. The defendants have not filed any proofs of claims against the estate. Therefore, the defendants' counterclaims do not create a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(C).

■ However, the debtor contends that by filing counterclaims in the bankruptcy court, the defendants have waived a trial by jury and have consented to the determination of the debtor's adversary proceeding by the bankruptcy court, with the result that a withdrawal of the reference should be denied. The United States Supreme Court has clearly ruled that when a party files a claim against a debtor, a trial by jury is unavailable because a determination of the claim is part and parcel of the process of an allowance and disallowance of claims which is integral to the restructuring of the debtor-creditor relations, and, therefore, a public right. *Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Accord, *Langenkamp v. Culp*, — U.S. —, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). The Supreme Court has not yet ruled on whether a Bankruptcy Court may conduct a jury trial. The Circuit Courts of Appeal are divided on this issue. Compare *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2d Cir.1990), *cert. granted,* — U.S. —, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), *vacated and remanded,* — U.S. —, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990) (the Second Circuit sustained a jury trial in Bankruptcy Court in a core proceeding) with *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir.1990) ("[b]ankruptcy courts cannot conduct jury trials in non-core matters, where the parties have not consented."); *Beard v. Braunstein*, 914 F.2d 434, 445 (3rd Cir.1990); ("Accordingly a bankruptcy court cannot conduct a jury trial in a non-core proceeding".); *Kaiser Steel Corporation v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 389–392 (10th Cir.1990) (In a core adversary proceeding for the turnover of fraudulently transferred assets, the bankruptcy court does not have the authority to conduct a jury trial); *In re United Missouri Bank of Kansas City, N.A.* (901 F.2d 1449, 1454–1457 (8th Cir.1990) (In a core adversary proceeding to recover a preference, the bankruptcy court has neither the express authority nor the implied authority to conduct a jury trial). Both the Tenth and Eighth Circuits rejected the Second Circuit's reasoning in the *Ben Cooper* case, which authorized the

bankruptcy courts to conduct jury trials only in core proceedings. The Eighth Circuit said in the *United Missouri Bank* case:

> We hesitate to reach too far to imply the authority for an Article I court to try jury cases involving private rights simply because Congress seeks to introduce a more efficient bankruptcy scheme....
>
> \* \* \* \* \* \*
>
> Given the absence of supporting legislative history, and the serious constitutional problems posed by an alternative interpretation, our interpretation is not only reasonable, but necessary.

*Id.* at 1456–1457.

No appellate federal court has ruled that a bankruptcy court may conduct a jury trial in a non-core case, such as in the instant case. Moreover, no appellate court has ever ruled that a defendant's counterclaim to a plaintiff's noncore proceeding transforms the action to a core proceeding.

In *Beard v. Braunstein,* 914 F.2d at 434, it was expressly held that a non-debtor's counterclaim to a non-core proceeding commenced by a trustee in bankruptcy did not result in the non-debtor's consent to bankruptcy court jurisdiction. To rule otherwise, would be to condone jurisdiction by ambush. Manifestly, the defendants in the instant case had no acceptable alternatives in order to protect their rights. If they filed proofs of claims against the debtor, they would have consented to the jurisdiction of the bankruptcy court, at least for the purpose of waiving their rights to a jury trial. If they failed to assert the counterclaims they could not sue the debtor in a nonbankruptcy court to cancel the notes because the debtor is protected by the automatic stay imposed under 11 U.S.C. § 362(a). The defendants could have brought a separate action in this court for damages and for cancellation of the notes based on alleged fraud because the automatic stay does not apply to actions against the debtor brought in the bankruptcy court where the debtor's case is pending. *In re Atreus Enterprises, Ltd.,* 120 B.R. 341, 345 (Bankr.S.D.N.Y.1990). Such suits are the equivalent to the filing of claims

against the estate and allowable under 11 U.S.C. § 501, despite the automatic stay. Therefore, not only would the defendants have waived their right to trial by jury, but they would also have waived their argument that they were not amenable to the personal jurisdiction of this court. The defendants' constitutional rights to an Article III forum should not be lost because the defendants exercised their only significant option by refraining from filing proofs of claim and waiting for the debtor to sue them, at which time they filed their answers with counterclaims for damages and cancellation of the surplus notes.

■ It is not significant that under Fed.R.Civ.P. 13 the defendants' counterclaims might be regarded as compulsory, because they arose out of the same transactions as the original claim by the debtor. The defendants were not compelled to file their counterclaims or forever lose their rights thereunder, because Bankruptcy Rule 7013 differs from Fed.R.Civ.P. 13 in that a party sued by a trustee or a debtor in possession need not assert as a counterclaim any claim against the trustee or debtor in possession or the estate unless the claim arose after the order for relief. The defendants' counterclaims arose as a result of agreements before the order for relief and are governed by Bankruptcy Rule 7013, which does not make them compulsory. However, the only option available to the defendants was either to file proofs of claims and waive their rights to a trial by jury or suffer the consequences of the automatic stay and a possible discharge of the prepetition claims pursuant to 11 U.S.C. § 1141(d)(1) in the event that the debtor succeeds in achieving a confirmed plan of reorganization. A confirmed plan of reorganization also acts as *res judicata* with respect to claims resolved as a result of the confirmation. *See Howe v. Vaughan (In re Howe),* 913 F.2d 1138 (5th Cir.1990).

*Consent to Non–Article III Jurisdiction*

■ A bankruptcy judge may enter a final order or judgment in a non-core proceeding in accordance with 28 U.S.C. § 157(c)(2) "with the consent of all the par-

ties to the proceeding." In the instant case, "all the parties" have not consented to such jurisdiction. Manifestly, the defendants did not consent when they refrained from filing proofs of claims and filed counterclaims only after being sued by the debtor. The defendants' failure to consent was further evidenced by their demands for a jury trial in the answers which they filed.

Moreover, the debtor has not consented to non-Article III jurisdiction. In its complaint, the debtor expressly stated that its action against the defendants was a non-core proceeding. However, such statement need not be regarded as a nonrebuttable judicial admission in the pleadings. *See United States Aviex Co., Inc. v. Aviex International, Inc. (In re United States Aviex Co., Inc.)* 96 B.R. 874, 879 (N.D.Ind. 1989). Nonetheless, the debtor's characterization of its proceeding as non-core is certainly inconsistent with a consent to non-Article III jurisdiction, especially when Bankruptcy Rule 7008(a) requires a clear and unambiguous "consent of all the parties to the proceeding." The Advisory Committee Note to Bankruptcy Rule 7008(a) states in relevant part: "Only express consent in the pleadings or otherwise is effective to authorize entry of a final order or judgment by the bankruptcy judge in a non-core proceeding." Additionally, Bankruptcy Rule 7012(b) states in relevant part:

> In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's orders *except with the express consent of the parties.*

(Emphasis added).

In the instant case, neither the debtor, nor the defendants expressly consented to the bankruptcy judge's authority to enter final orders or judgment in this non-core proceeding. Indeed, the defendants object to this proceeding being characterized as core, whereas the debtor expressly declared in its complaint in this adversary proceeding that the action was non-core. In these circumstances, the bankruptcy judge may not enter final orders or judgment in this non-core proceeding in which the defendants have not filed any proofs of claim and have demanded a jury trial with respect to all the issues because all of the parties have not consented to a final determination of this non-core proceeding by the bankruptcy court.

In sum, the debtor's non-core adversary proceeding for a breach of a prepetition contract arising out of the defendants' prepetition and post-petition alleged defaults in paying the amounts due under the surplus notes should be tried by a jury as to the disputed issues of fact after the district court withdraws the reference as to this proceeding pursuant to 28 U.S.C. § 157(d). A bankruptcy court does not have authority to conduct a jury trial in a non-core proceeding especially when all the parties have not consented. *In re Cinamatronics, Inc.,* 916 F.2d 1444 (9th Cir. 1990); *Kaiser Steel Corporation v. Frates (In re Kaiser Steel Corp.),* 911 F.2d at 389–392); *In re United Missouri Bank of Kansas City, N.Y.,* 901 F.2d at 1454–1457; *In re Ben Cooper, Inc.,* 896 F.2d at 1403 ("Thus, the Seventh Amendment may well render unconstitutional jury trials in non-consensual non-core proceedings, because of the requirement that findings of fact by the bankruptcy court be reviewed *de novo* by the district court.").

### *Personal Jurisdiction*

The defendants maintain that if the debtor's adversary proceeding is a non-core proceeding, Bankruptcy Rule 7004(d) "is unconstitutional as applied to non-consensual, non-core proceedings governed by state law." Moreover, the defendants contend that if the district court withdraws the reference, their amenability to personal jurisdiction in New York should not be governed by Bankruptcy Rule 7004(d), which provides:

> **(d) Nationwide Service of Process.** The summons and complaint and all other process except a subpoena may be served anywhere in the United States.

Both Rule 7004(b) and Fed.R.Civ.P. 4(c)(2)(C)(i) and (d) authorize that service may be made within the United States by first class mail postage prepaid.

942

Pursuant to 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, arising in or related to cases under title 11." The original jurisdiction exercised by the district courts with respect to non-core cases related to cases under title 11 may be referred to the bankruptcy courts of the respective districts in accordance with 28 U.S.C. § 157(a). However, if the reference is withdrawn by the district court pursuant to 28 U.S.C. § 157(d), the proceeding is heard and determined by the district court in accordance with the original non-exclusive jurisdiction vested in the district courts before the case was previously referred to the bankruptcy court for that district. Hence, the district court's withdrawal of a reference of all or any part of a bankruptcy case, does not detract from the fact that the district court's jurisdiction over that case, or any part of that case, is derived not from concepts of other federal authority or because of diversity of jurisdiction, but because Congress has conferred original, but not exclusive jurisdiction, upon district courts with respect to cases related to bankruptcy cases, as expressed in 28 U.S.C. § 1334(b).

If the reference to the debtor's non-core proceeding against the defendants is not withdrawn, the amenability of the defendants to personal jurisdiction before the bankruptcy court in New York would be governed by Bankruptcy Rule 7004(d). The bankruptcy court need not resort to state law for service of process because Bankruptcy Rule 7004(d) authorizes the nationwide service of process in bankruptcy cases and in non-core proceedings related to bankruptcy cases. This is so because 28 U.S.C. § 1334(d) provides:

(d) The district court in which a case under title 11 is commenced or is pending shall have *exclusive* jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

(Emphasis added).

Because the district court has exclusive jurisdiction over property of the estate, including causes of action to recover such property, it follows that nationwide service for personal jurisdiction with respect to property within the exclusive jurisdiction of the district court is appropriate. Accordingly, if the district court withdraws the reference, in whole or in part, as to any case or proceeding referred to the bankruptcy court, the same nationwide service applicable under Bankruptcy Rule 7004(d) should govern the litigation after the withdrawal by the district court, especially since the district court continues to exercise exclusive jurisdiction over the debtor's property and property of the estate, wherever located, as authorized under 28 U.S.C. § 1334(d).

The defendants rely upon *Holland Industries, Inc. v. Western Entertainment, Inc., (In re Mountain View Coach Line, Inc.)*, 1989 WL 129479, 1989 U.S.Dist. Lexis 12698 (S.D.N.Y.1989) where the district court did not invalidate Bankruptcy Rule 7004(d), but concluded that traditional long-arm jurisdiction principles apply in a non-core "garden variety state law breach of contract claim" after the withdrawal of the reference. This ruling overlooks the fact that Congress gave the district courts, and the bankruptcy courts to which bankruptcy cases are uniformly referred, exclusive jurisdiction of all the property of the debtor and the estate, wherever located, as of the commencement of the case. It was not intended that the bankruptcy court could apply nationwide service under Bankruptcy Rule 7004(d), but that upon withdrawal of the reference of a non-core proceeding, the district court should apply a less extensive personal jurisdiction formula derived from the New York CPLR 302(a)(1) long-arm minimum contacts theory. Moreover, this is not the garden variety state law breach of contract claim that the district court would normally entertain under either diversity of citizenship or federal law standards. The instant case might not be eligible for jurisdiction in a federal district court on either diversity of citizenship or federal jurisdictional standards except for the fact that it is a case related to a bankruptcy case, and therefore, expressly within the district court's jurisdictional reach

because of 28 U.S.C. § 1334(b). If the instant case could not have been cultivated in the district court's garden before the BAF-JA amendments of 1984, it would have been weeded out pursuant to Fed.R.Civ.P. 12(b)(2).

The Seventh Circuit Court of Appeals in *Diamond Mortgage Corporation v. Sugar*, 913 F.2d 1233 (7th Cir.1990), *reh'g denied* (Nov. 21, 1990), rejected the concept that nationwide service of process authorized by Bankruptcy Rule 7004(d) should apply only to those adversary proceedings which are heard in the bankruptcy court. The Seventh Circuit held that Bankruptcy Rule 7004(d) applies to all adversary proceedings and that the bankruptcy court did not have greater personal jurisdiction than federal district courts. The *Diamond Mortgage* court said:

> But nothing in the literal terms of the pertinent rules—and, in particular, nothing in Rule 1001, 7001 or 7004(d)—even remotely suggests that they are to be applied differently in core and non-core proceedings.
>
> .    .    .    .    .
>
> Consistent with these goals and the language of the rules, therefore, we hold that courts may apply Bankruptcy Rule 7004(2)—allowing nationwide service of process—in non-core, related proceedings.

*Id.* at 1243–1244.

The *Diamond Mortgage* court also rejected the argument that the application of Bankruptcy Rule 7004(d) and the concept of nationwide service violated the constitutional due process rights of the defendants because of lack of minimum contacts with the forum state, saying:

> We have already established that district courts exercise original subject matter jurisdiction over non-core matters pursuant to 28 U.S.C.A. section 1334 (West Supp.1990). Since section 1334 provides federal question jurisdiction, the sovereign exercising its authority over the Barron and Jaffe Attorneys is the United States, not the State of Illinois. Hence, whether there exist sufficient minimum contacts between the attorneys and the State of Illinois has no bearing upon whether the United States may exercise its power over the attorneys pursuant to its federal question jurisdiction. Certainly, the attorneys have sufficient contacts with the United States to be subject to the district court's *in personam* jurisdiction.

*Id.* at 1244.

Accordingly, Bankruptcy Rule 7004(d) applies not only to the debtor's adversary proceeding while pending in this bankruptcy court, but equally as well in the event of a withdrawal of the reference to the district court, so that upon such withdrawal of the reference, the district court need not reexamine the defendants' personal jurisdictional nexus in the light of New York's CPLR 302(a)(1) long-arm statute.

## PROPOSED CONCLUSIONS OF LAW

1. The debtor's adversary proceeding to collect some prepetition nonpayment and substantially all remaining nonpayments of interest which became due post-petition under the surplus notes executed and issued pursuant to prepetition contracts with the debtor is entirely a non-core proceeding related to a case arising under title 11 within the meaning of 28 U.S.C. § 157(c)(1).

2. The debtor's adversary proceeding to collect unpaid interest due under surplus notes issued by the defendants to the debtor, which the defendants seek to cancel because of allegations of fraud asserted in their counterclaims, cannot be characterized as a turnover proceeding with respect to property of the estate within the meaning of 28 U.S.C. § 157(b)(2)(E) for the purpose of core jurisdiction.

3. Even if the funds claimed by the debtor in its adversary proceeding are essential to the administration of the bankruptcy estate, it does not follow that the debtor's adversary proceeding to recover such funds involves the liquidation of existing estate assets or the adjustment of a debtor-creditor relationship between the parties within the meaning of 28 U.S.C. § 157(b)(2)(O) for the purpose of core jurisdiction.

944

4. The counterclaims filed by the defendants in response to the adversary proceeding commenced by the debtor do not transform the adversary action to a core proceeding as defined in 28 U.S.C. § 157(b)(2)(C).

5. The counterclaims filed by the defendants in response to the debtor's adversary proceeding do not constitute a waiver by the defendants of their right to a jury trial on all the issues or a consent to a determination of the adversary proceeding by the bankruptcy court, especially in light of the fact that the defendants did not file any proofs of claim in this case.

6. The defendants did not expressly consent to the bankruptcy court's entry of final orders or judgments in the non-core proceeding. Additionally, the debtor did not expressly consent to the bankruptcy court's entry of final orders or judgments in this case and, instead, characterized this proceeding in the complaint as non-core. Thus, there was no consent by all the parties to this adversary proceeding that the bankruptcy court could make a final determination, as required by 28 U.S.C. § 157(c)(2) and Bankruptcy Rules 7008 and 7012(b).

7. Because this is a non-core adversary proceeding in which the defendants have requested and are entitled to a jury trial on all issues, and because all the parties have not consented to non-Article III treatment, and because the bankruptcy court may not conduct a jury trial in a non-core adversary proceeding, it is recommended that cause has been shown by the defendants for the district court to withdraw the reference with respect to this adversary proceeding, as authorized under 28 U.S.C. § 157(d).

8. Upon withdrawal of the reference the district court need not reexamine the basis for personal jurisdiction over the defendants in the context of the long-arm provisions expressed in New York C.P.L.R. 302(a)(1). Personal jurisdiction is based on Bankruptcy Rule 7004(d), which applies to all core and non-core cases in bankruptcy court, even if the reference is withdrawn, because jurisdiction is derived from the Bankruptcy Code and not as a result of diversity of jurisdiction or some non-bankruptcy federal source.

9. Pursuant to Bankruptcy Rule 9033 the foregoing proposed findings of fact and conclusions of law shall be served by the clerk on. all the parties.

Dated: White Plains, New York

    January 7, 1991.