In re Petition of Colin Graham BIRD and Paul Anthony Brereton Evans, as Joint Provisional Liquidators of North Atlantic Insurance Company Limited, f/k/a British National Life Insurance Society Limited and British National Insurance Company Limited, Debtor in Foreign Proceeding.

Armco Inc., Armco Financial Services Corporation, Armco Financial Services International Limited, Armco Pacific Limited, and Northwestern National Insurance Company, Plaintiffs,

v.

North Atlantic Insurance Company Limited (f/k/a British National Life Insurance Society Limited and British National Insurance Company Limited), Robert T. Donohue, Patrick H. Rossi, Larry L. Stinson, David W. Atkins, International Trustee and Receivership Services, Inc., International Run–Off Services, Inc., Wingfield Limited, CI Services Holdings Limited, and NPV Limited, Defendants.

Colin Graham Bird and Paul Anthony Brereton Evans, as Joint Provisional Liquidators of North Atlantic Insurance Company Limited, f/k/a British National Life Insurance Society Limited and British National Insurance Company Limited, Plaintiffs–Counterclaim Defendants,

v.

Northwestern National Insurance Company, Defendant–Counterclaim Plaintiff.

Bankruptcy No. 97 B 41602 (TLB). Adversary Nos. 98–8931A, 98–8303A.

United States Bankruptcy Court, S.D. New York.

Jan. 13, 1999.

See also 222 B.R. 229.

Cadwalader, Wickersham & Taft, New York City, by Kenneth P. Coleman and Scott E. Eckas, for the Joint Provisional Liquidators of North Atlantic Insurance Company Limited.

Shearman & Sterling, New York City, by Ronald DeKoven, Stephen R. Fishbein, Brian H. Polovoy, and Lynette Kelly, for Northwestern National Insurance Company and Armco, Inc. et al.

### Corrected Text of Bench Ruling dated January 6, 1999, on Provisional Liquidators' Motion to Dismiss

TINA L. BROZMAN, Chief Judge.

At issue in this ancillary bankruptcy case is whether claims brought against the debtor in this court in the nature of counterclaims and an adversary proceeding violate the § 304 injunction which generally prohibits such actions or whether legal proceedings in this court are outside the reach of that injunction.

### I.

North Atlantic Insurance Company Limited ("North Atlantic" or the debtor) was formerly known as British National Life Insurance Society Limited ("British National")
until 1982, when it became and remained British National Insurance Company Limited ("BNIC") until 1991. On March 6, 1997, North Atlantic filed a winding up petition in the High Court of Justice of England and Wales in London, England. Provisional liquidators were appointed who filed in this court an ancillary proceeding pursuant to 11 U.S.C. § 304 on March 12, 1997. Having found that the requirements of § 304(c) were met, I issued a preliminary injunction on April 7, 1997, which was subsequently renewed as needed. It enjoined all persons "from commencing or continuing any arbitration, or any judicial, quasi-judicial, administrative or regulatory action or process whatsoever ... involving North Atlantic or any of its property in the United States."

Northwestern National Insurance Company ("Northwestern"), an American property and casualty insurer incorporated in Wisconsin, also has also undergone some identity changes. It was originally Bellefonte Insurance Company ("Bellefonte") until 1983 when it merged into Universal Reinsurance Corporation ("Universal") which ultimately merged into Northwestern in 1992.

In 1979 and 1980, Bellefonte and British National entered into several transfer agreements. Trusts were created in New York and New Jersey to secure British National's obligations under the transfer agreements to Bellefonte. The provisional liquidators have commenced this adversary proceeding against Northwestern seeking a declaratory judgment that North Atlantic is entitled to the interest income from those two trusts (the "Trust Action"). The complaint does not seek damages or the turnover of the trust interest income. Northwestern has asserted affirmative defenses which the provisional liquidators do not challenge and has counterclaimed for damages, including punitive damages, alleging that the debtor fraudulently withdrew approximately 16 million dollars based on misrepresentations of the value of the trust reserves. It is these counterclaims which the provisional liquidators seek to have dismissed.

Until 1991, Armco, Inc. ("Armco") owned the North Atlantic Group, which included BNIC when the trusts were created. Armco

also owned Bellefonte (which later on became Northwestern) as a wholly-owned subsidiary. Armco and certain of its direct and indirect wholly-owned subsidiaries, including Northwestern (collectively "Armco"), have commenced an adversary proceeding against North Atlantic alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), such as fraud and conspiracy to defraud, as a result of the sale of the North Atlantic Group and fraud, breach of contract and conversion resulting from the withdrawals from the trust funds (the "RICO Action"). The RICO Action seeks the imposition of a constructive trust, the turnover to Armco of the funds held in such trust, and monetary, including treble, damages. The provisional liquidators move to dismiss this action as well.

## II.

The provisional liquidators argue that the Trust Action counterclaims and the RICO Action violate the § 304 preliminary injunction which prohibits the commencement of any actions against the debtor. They point out that Northwestern has twice before tried and failed to modify the preliminary injunction to allow it to either protect itself from third party suits or, in the alternative, implead North Atlantic into those actions. They characterize what Northwestern has done as a third effort to bring suit, but this time without first asking the court to modify the injunction to enable Northwestern to do so. The provisional liquidators additionally stress that comity warrants deference to the foreign proceeding.

Northwestern responds that it did not need my approval because it relied on comments made by my colleague Judge Gallet—during the hearing on the first motion to modify the preliminary injunction—to the effect that the commencement of an adversary proceeding against the debtor in this court, where the § 304 case is pending, would be permissible. Citing the law of the case doctrine, Northwestern argues that the issue now raised by the provisional liquidators has

already been decided and that I am bound by that ruling. The provisional liquidators call the remarks classic *dictum*.

## III.

### A. Judge Gallet's Remarks

█ Moving into my determination on the merits, I would like to begin with Judge Gallet's comments. They are exactly that—comments. I do not believe they were intended to settle the issue that is now being raised and they were not made in response to any argument or briefing on the point. Judge Gallet was referring to the harm that Northwestern threatened would befall North Atlantic if my injunction were not expanded to include protection of Northwestern.[1] Judge Gallet did not have to decide whether or not what Northwestern threatened to do was inappropriate or appropriate. In any event, as will become apparent from my ruling, with all due respect to my colleague, I believe his *dictum* ignored the whole thrust of ancillary bankruptcy proceedings, which centralize administration in the home court. Even if I were mistaken and Judge Gallet's comments could be considered dispositive, I am convinced that such a ruling constitutes manifest error and, consequently, I am not bound by what would have been law of the case. *See United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir.1994), *cert. denied*, 514 U.S. 1038, 115 S.Ct. 1404, 131 L.Ed.2d 291 (1995); *North River Insurance Company v. Philadelphia Reinsurance Corporation*, 63 F.3d 160, 165 (2d Cir.1995) (the law of the case should be "disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated.") Therefore, I move on to the more substantive arguments.

### B. Whether Northwestern Violated the § 304 Injunction

Analogizing the § 304 injunction to the automatic stay in a full-scale American bankruptcy case, Northwestern asserts that be-

---

1. Northwestern had threatened that if its motion to modify the preliminary injunction to include Northwestern within the scope of protected parties were not granted, Northwestern would commence numerous adversary proceedings to bring the North Atlantic into the litigation in which Northwestern was a party.

cause litigation against the debtor in the court where his or her case is pending does not violate the automatic stay, it therefore should not be considered to violate the preliminary injunction either. North Atlantic does not dispute the propriety of an analogy between a § 304 injunction and an automatic stay but claims that, in the context of an ancillary proceeding, whether litigation against the debtor should proceed is more appropriately managed and adjudicated by the foreign court where the bankruptcy case was begun. This point of view, claim the provisional liquidators, is in line with granting deference and comity to the foreign jurisdiction. In the background are heard Northwestern's cries of unfairness that the provisional liquidators should be allowed to sue it but that Northwestern may not defend itself.[2] Northwestern argues that the counterclaims in the Trust Action are compulsory and must be asserted now or be lost. Moreover, so the argument goes, British law does not have a RICO cousin and Northwestern will be deprived of its rights if not allowed to bring its RICO Action against the debtor in an American court.

■ To resolve the question presented, we must pause to examine the purposes underlying ancillary proceedings. The principal goal of a § 304 case is to permit foreign debtors "to prevent the piecemeal distribution of assets in the United States by means of legal proceedings initiated in domestic courts by local creditors." *In re Davis,* 191 B.R. 577, 582 (Bankr.S.D.N.Y.1996) (*quoting Koreag, Controle et Revision, S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision, S.A.),* 961 F.2d 341, 348 (2d Cir.)) (citations omitted), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992)); *see In re Rubin,* 160 B.R. 269, 274 (Bankr. S.D.N.Y.1993). As I have remarked on many occasions, a case under § 304 is not a full-scale bankruptcy case, but "a limited one, designed to function in aid of a foreign proceeding pending in a foreign court." *Davis,* 191 B.R. at 582 (*quoting Universal Casualty & Surety Co. Ltd. v. Gee (In re Gee),* 53 B.R.

891, 898 (Bankr.S.D.N.Y.1985)); *see In re Bird,* 222 B.R. 229, 233 (Bankr.S.D.N.Y. 1998); *In re Brierley,* 145 B.R. 151, 158 (Bankr.S.D.N.Y.1992). It is the foreign court which is in the best position to assess where and when claims should be liquidated in order to conserve estate resources and maximize the assets available for distribution. *See Bird,* 222 B.R. at 233; *In re Rukavina,* 227 B.R. 234 (Bankr.S.D.N.Y.1998); *In re Gercke,* 122 B.R. 621, 626–27 (Bankr.D.D.C. 1991).

■ Here, the appointment of the provisional liquidators effected an automatic stay in England of all actions or proceedings against the company, except by leave of the High Court. The very purpose of the § 304 proceeding is to extend the English automatic stay to American creditors and assets and not allow creditors to do here what they would not be allowed to do in the United Kingdom. *See Lindner Fund, Inc. v. Polly Peck Int'l PLC,* 143 B.R. 807 (S.D.N.Y.1992).

■ Many judges, myself included, have likened the injunctive relief provided in connection with 11 U.S.C. § 304 to the protection afforded by the automatic stay under § 362(a). *See Bird,* 222 B.R. at 233; *In re Banco Nacional de Obras y Servicios Publicos,* 91 B.R. 661, 664 (Bankr.S.D.N.Y.1988); *In re Kingscroft Insurance Company, Ltd.,* 150 B.R. 77, 81 (Bankr.S.D.Fla.1992). The automatic stay is designed to offer the debtor repose from his or her creditors' collection efforts, to protect creditors from each other, and to insure an orderly liquidation or administration of the estate. *See Prewitt v. North Coast Village, Ltd. (In re North Coast Village, Ltd.),* 135 B.R. 641, 643 (9th Cir. BAP 1992). The automatic stay applies only to proceedings against the debtor. *See Koolik v. Markowitz,* 40 F.3d 567, 568 (2d Cir. 1994). If the aggressor, so to speak, is the debtor, the stay is not implicated. *See id.* Even where the debtor is the defendant, however, the automatic stay does not apply to actions brought in the bankruptcy court where the debtor's case is pending. *See North Coast Village,* 135 B.R. at 643; *J.T.*

---

**2.** Remember, however, that the provisional liquidators have not challenged Northwestern's right to assert affirmative defenses.

*Moran Financial Corp. v. American Consolidated Financial Corporation (In re J.T. Moran Financial Corp.)*, 124 B.R. 931, 940 (S.D.N.Y.1991); *Lighthouse Bluffs, Corp. v. Atreus Enterprises, Ltd. (In re Atreus Enterprises, Ltd.)*, 120 B.R. 341, 346 (Bankr. S.D.N.Y.1990). Such suits against the debtor can be considered the functional equivalent of filing a proof of claim against the bankruptcy estate. *See Moran*, 124 B.R. at 940. The bankruptcy court is invested with the authority, mandate and power to determine and allow claims against the debtor, despite the automatic stay. *See Atreus*, 120 B.R. at 346; *North Coast Village*, 135 B.R. at 643 ("the stay and provisions for relief from the stay vest in the bankruptcy court control over which collection efforts will be allowed to go forward and the extent to which the debtor or the estate will bear the burden or cost of defending against those collection efforts."). If this exception did not exist, courts would be left with the absurd result of having to modify the automatic stay to allow a creditor to move to lift the stay in the first place.

The purposes of the automatic stay, to preserve the assets of the debtor for the benefit of all creditors and to protect the creditors from each other by stopping the race to seize the debtor's assets, are not advanced by disallowing suits against the debtor in the court where the bankruptcy case is pending. *See id.* In fact, the opposite is true. Having such litigation go forward in what can be termed the home court centralizes all actions against the debtor in one forum under the control of one court and thereby aids the home court in protecting the debtor and creditors and in efficiently administering the estate. *See id.* at 643–644. But, it should be emphasized, this court has control over the matters on its docket such that, if an adversary proceeding be premature, the court may defer adjudication. For example, if it is unlikely that an estate will have sufficient funds to compensate claims of stockholders, an adversary proceeding against a debtor arising out of the purchase or sale of a security, which under § 510 of the Bankruptcy Code bears the same priority as the security itself, might be suspended until such time as it were more likely that its adjudication would not be an empty gesture.

Clearly, then, counterclaims asserted against the debtor in the same bankruptcy proceeding in which the debtor initiated the action against the counterclaimants are not violative of the automatic stay, although they would be if asserted in another proceeding. *See Koolik*, 40 F.3d at 568 ("an answer that asserts a counterclaim against a plaintiff who becomes a bankruptcy debtor is 'an action or proceeding against the debtor' within the meaning of § 362(a)(1), notwithstanding the fact that the plaintiff initiated the lawsuit."); *Cf. Justus v. Financial News Network Inc. (In re Financial News Network, Inc.)*, 158 B.R. 570, 573 (S.D.N.Y.1993) (FNN, itself a debtor in New York, did not violate the automatic stay in place in Kaypro's California case, by objecting to Kaypro's proof of claim because such action was defensive in nature and could not be construed as an active attempt to recover property from Kaypro in the California bankruptcy case). The same would be true for the RICO Action complaint here.

Whereas §§ 362 and 304 perform similar functions in protecting the debtor from his or her creditors, as with many analogies, there is a danger in expanding the analogy to an equation, for my function in a domestic bankruptcy case is quite different from my function in an ancillary one. Were this a traditional chapter 7 or 11 proceeding, I would be empowered to administer North Atlantic's estate. As explained above, Northwestern's counterclaims would be permissible, although, for the sake of general edification, not necessarily compulsory. *See Moran*, 124 B.R. at 940 ("Bankruptcy Rule 7013 differs from Federal Rule of Civil Procedure 13 in that a party sued by a trustee or debtor in possession need not assert as a counterclaim any claim against the trustee or debtor in possession or the estate unless the claim arose after the order for relief."). Armco's RICO Action, so long as brought in this court, would be allowed. However, in the context of an ancillary proceeding, I do not determine the extent or validity of claims against the estate; proofs of claim are not even filed in this court. The administration of the debtor's estate, as a whole, is not

within my province, for I am not the home court; the main proceeding is in the United Kingdom. It would offend principles of comity for me to decide, in lieu of the English court, whether the claims which Northwestern and Armco seek to assert would unduly interfere with the provisional liquidation and the court proceedings which likely would follow it.

The order establishing the provisional liquidation (the "Provisional Liquidation Order") accords the provisional liquidators the following powers: to consider, prepare and promote a scheme of arrangement; to nominate an informal creditors' committee to assist them in the discharge of their duties; and to finalize the terms of a scheme of arrangement and explanatory statement. They are also empowered to carry on the business of the company and to settle claims as necessary. Without any doubt, the High Court has asserted jurisdiction over this debtor's business. Whereas I have the power to modify my own injunction should that be appropriate, see Banco Nacional, 91 B.R. 661, it is not my mandate to determine which collection efforts should go forward and under what conditions. See North Coast Village, 135 B.R. at 643. My job is to aid the efficient administration of the foreign proceeding by not allowing creditors to pursue or execute on American assets, if the conditions for relief under § 304 have been met. See Brierley, 145 B.R. at 158 (In a § 304 proceeding, the U.S. bankruptcy court "does not administer an estate as such but simply aids in a foreign bankruptcy."); Davis, 191 B.R. at 583; Rubin, 160 B.R. at 275. The underlying rationale for allowing actions against the debtor in the home court, that is, that the purposes of the automatic stay are not undermined by allowing such suits in the court where all litigation is centralized, simply does not exist when I preside over an ancillary proceeding.

 "For purposes of § 304, the estate of the foreign debtor is defined by the jurisdiction in which the foreign proceeding is pending." Koreag, 961 F.2d at 348. As in Koreag, the provisional liquidators have sought my help, by way of the preliminary injunction, to later effectuate the turnover of the debtor's property to the provisional liquidators in order to be administered in the foreign proceeding. See id. at 349. Koreag dictates that I should apply local law "to determine whether the debtor has a valid ownership interest" in the trust income. Id. Thus, the issue of who is entitled to the interest income from the trusts is properly before me.

 However, Northwestern's counterclaims and Armco's RICO Action seek damages and, as such, are actions against the debtor prohibited by the preliminary injunction. They do not fall into the judicially-created adversary proceeding exception to the automatic stay because their claims are being asserted in the ancillary proceeding—not the main proceeding in the United Kingdom. Even were I to consider these suits the functional equivalent of proofs of claim, their filing here would be misplaced and without effect. Northwestern's and Armco's request for damages should be addressed in the foreign proceeding because they are collection efforts by creditors that impose a burden on the provisional liquidators of defending those actions. The foreign court is in the best position to decide how to administer the estate.

North Atlantic suggests that Northwestern and Armco seek leave from the High Court to bring suit here; I think that is entirely appropriate. See Davis, 191 B.R. at 580. The adversary proceeding brought by Armco is stayed here for another three to four months in any event,[3] giving the parties ample time to seek leave of the High Court for the institution of suit in the United States. The proceedings in the United Kingdom have not crystallized yet into a winding-up order or a scheme of arrangement to be voted on by creditors. Significantly, however, that provisional liquidation is clearly geared up for processing claims inasmuch as the Provisional Liquidation Order envisages the implementation of a scheme of arrangement and

---

**3.** I previously stayed the adversary proceeding because certain of the defendants are targets of a criminal investigation which overlaps almost completely with the allegations of the complaint before me.

empowers the provisional liquidators to settle claims. Thus, Northwestern's and Armco's lamentation about not being able to have their claims administered in the foreign proceeding is not only premature, but ill-founded. It is fundamental that the English court decide when, where and how those claims should be processed.

## IV.

 Because Armco's complaint has violated the preliminary injunction, I need not pass on if, when or where a RICO action would be appropriate. Persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed. *Celotex v. Edwards,* 514 U.S. 300, 316, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Accordingly, I am dismissing the RICO Action against North Atlantic and Northwestern's counterclaims in the Trust Action without prejudice to their reinstitution should the High Court grant Northwestern and Armco that authority.

The parties are directed to settle an order consistent with this decision.